423 So.2d 371 (1982)
Melvin BERHOW and Wanda Berhow, Appellants,
v.
Loris Eugene CROW and Margie Crow, Appellees.
No. AE-388.
District Court of Appeal of Florida, First District.
October 12, 1982.
Rehearing Denied December 30, 1982.
*372 Robert B. Staats, Panama City, for appellants.
Leo C. Jones of Jones & Blackmon, Panama City, for appellees.
ERVIN, Judge.
This case involves an appeal from an order denying a motion to vacate a judgment of adoption filed on behalf of the minor's foster parents. The lower court held that the foster parents lacked standing to challenge the adoption on two grounds: They were not related to the minor, nor was Brian Payne, the natural father of the child, ever legally married to the natural mother.[1] Because we determine that the foster parents' relationship with the foster child was so strong as to create a fundamental liberty interest, we reverse both the lower court's determination that appellants do not have standing to move to vacate in part the earlier order granting the appellee's petition to adopt Dawn Payne, a minor, as well as the judgment of adoption as it applies to her.
The allegations and limited evidence in the record appear to indicate that Carol Crow and Brian Payne were never married, but became the teenage parents of Dawn and Carolyn Payne. The record is somewhat unclear as to what had transpired in the life of Carolyn Payne between her birth and the granting of the lower court's final judgment of adoption. It does reveal that Dawn was born prematurely in 1975 and in need of open heart surgery. Shortly after Dawn's birth, Carol Crow, Dawn's natural mother, approached the Berhows and asked them to raise Dawn. The Berhows consented, became licensed foster parents in California, and were registered in that state as Dawn's parents upon the consent of the natural mother. Thereafter, Carol Crow died, and her parents, the appellees Loris and Margie Crow, executed a notarized statement filed with the State of California acquiescing in the Berhow's request for full legal custody of Dawn. The Berhows then filed a petition for adoption in the California court system.
The California court did not act on the petition, because the Berhows and the California Bureau of Adoptions were then attempting to locate the natural father, Brian Payne. After he was finally located, he agreed on January 23, 1981 to relinquish his rights in Dawn in favor of the Berhows. The California court set March 6, 1981 as the date to hear the Berhows' petition for adoption, but the court never had a chance to act. In late February, 1981 the appellees came to the Berhows' home ostensibly to take Dawn out to dinner. They then took the two children to Panama City, Florida, where they filed a petition to adopt both Dawn and Carolyn. No notice of these proceedings was given to the appellants, and the record, although not clear, suggests that the lower court may not have even been advised of the existence of the Berhows. The petition was granted. Shortly thereafter, appellants, joined by the minors' natural father, moved for relief from the final judgment of adoption as it pertained to Dawn, alleging that the judgment was based upon false, misleading, or perjured testimony. The Berhows argued to the lower court that they had standing to move to vacate the order based in part on their "relationship" with Dawn. The lower court, as stated, denied the Berhows' motion on the ground that both lacked the requisite standing to attack the judgment.
We find that the foregoing factual scenario is so strong as to indicate that the Berhows, although not the natural parents of Dawn, have a fundamental liberty interest in preserving their familial relationship with Dawn. See Art. I, § 9, Fla. Const. The facts suggest that the Berhows had legal custody of Dawn; that Dawn had lived with and been raised by the Berhows *373 for most of her life; that Dawn's natural mother desired that the Berhows raise Dawn, and that the natural father later acquiesced. Because of the fundamental interest that the Berhows have in preserving the familial relationship with Dawn, the Berhows not only had standing to move to vacate the lower court's adoption order, but considerations of procedural due process require that the Berhows should have received notice and an opportunity to have been heard prior to the court's approval of the Crows' petition to adopt Dawn Payne.
Moreover, we determine it to have been an abuse of discretion for the lower court not to have required the consent of the Berhows to the adoption of Dawn by the Crows. § 63.062(2)(a), Fla. Stat. (1979). Because the Berhows were not accorded notice of the hearing on the Crows' petition to adopt, we vacate the judgment of adoption as it relates to Dawn Payne. The Berhows have not demonstrated any constitutional interests in preserving a relationship with Carolyn Payne, and we leave the lower court's order granting the Crows' petition to adopt Carolyn in full force, affirming too the appealed order determining that the Berhows have no standing to move to vacate the order granting the Crows' petition to adopt Carolyn.
In determining the existence of a constitutional liberty interest, we note that a similar interest was found to exist in Drummond v. Fulton County Department of Family and Children's Services, 547 F.2d 835 (5th Cir.1977), wherein the court examined a case involving a foster child removed from the foster parents' custody by the state without a hearing. The court observed that the foster parents had established a fundamental liberty interest requiring notice and an opportunity to be heard. Id. at 851-855. The case was later considered by the court en banc, resulting in its receding from its former opinion. See Drummond v. Fulton County Department of Family and Children's Services, 563 F.2d 1200 (5th Cir.1977), cert. denied, 437 U.S. 910, 98 S.Ct. 3103, 57 L.Ed.2d 1141 (1978). In so holding, the court noted that the state from the outset had only given the foster parents "temporary" rights in the child; that the child had been with the foster parents for only a few years, and that the foster parents' rights were founded on a state statute that could have been repealed at any time. Id.; accord, Kyees v. County Department of Public Welfare of Tippecanoe County, 600 F.2d 693 (7th Cir.1979).
However, in reversing Drummond I, the court placed a significant caveat upon its determination, stating: "It needs noting that this conclusion does not necessarily control every `foster family' situation, but only those in which a child placement agency charged with the custody of a child, places that child for temporary care. Other situations will have to be addressed on a case by case basis." Drummond, 563 F.2d at 1207. The case at bar represents a situation in which the child was placed by the natural mother  not the state  in the care of the foster parents for more than merely temporary care. Given such circumstances, we conclude on this record that the Berhows have demonstrated a due process liberty interest in maintaining their close family relationship with Dawn. Even facts less cogent than the factual scenario at bar would in our estimation trigger due process considerations under the Florida Constitution. Art. I, § 9, Fla. Const.
Our analysis is supported by Ramey v. Thomas, 382 So.2d 78 (Fla. 5th DCA 1980), rev. denied, 389 So.2d 1116 (Fla. 1980), a case argued extensively before the lower court. In Ramey, the maternal grandparents attempted to set aside an adoption order in favor of the paternal grandparents. Lack of standing was argued and rejected, because the court recognized a "sufficient interest" in the grandparent/grandchild relationship. What the Fifth District Court of Appeal alluded to as a "sufficient interest" was most probably the due process liberty interest that we have identified. Although Ramey dealt with the grandparent/grandchild relationship, we consider the exact type of relationship to be unessential to a determination of whether a fundamental liberty interest in the relationship was *374 demonstrated. Rather, it is the nature of the relationship that determines whether one's interests are "sufficient."
Cotten v. Hamblin, 234 Ark. 109, 350 S.W.2d 612 (1961), illustrates this principle. Cotten acknowledged that persons who had established no relationship with certain adoptive minors had no right to attack an adoption decree, but petitioners, who were the child's paternal grandparents, were deemed to possess the requisite standing. Their standing stemmed not from the type of relationship with the child  e.g., grandparent/grandchild  but from the nature of that relationship. They were found to have "occupied some sort of semi-loco parentis relationship to the children, ... ." Id., 350 S.W.2d at 613.
The United States Supreme Court has further amplified upon the concept of examining the nature of the foster parent/child relationship. In Smith v. Organization of Foster Families for Equality and Reform, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977), the Court was asked to determine whether the procedure by which a state removed foster children from a foster home met constitutional standards. While the Court recognized that a foster parent was not necessarily the equivalent of a biological parent, Id., 431 U.S. at 842 n. 48, 97 S.Ct. at 2108 n. 48, the Court did observe that fundamental familial interests were not created exclusively by a biological relationship. Instead, the emotional attachments stemming from intimate daily association form the crucial determinant in ascertaining the existence of a family.
At least where a child has been placed in foster care as an infant, has never known his natural parents, and has remained continuously for several years in the care of the same foster parents, it is natural that the foster family should hold the same place in the emotional life of the foster child, and fulfill the same socializing functions, as a natural family. For this reason, we cannot dismiss the foster family as a mere collection of unrelated individuals.
Smith, 431 U.S. at 844, 97 S.Ct. at 2110 (footnote omitted).
Because the nature of the Berhows' relationship with Dawn  initiated by Dawn's natural mother, stimulated by the State of California, consented to by the natural father, originally acquiesced in by the maternal grandparents, and covering most of Dawn's life  is such as to form family ties, creating a fundamental liberty interest, the Berhows unquestionably have demonstrated a due process right to notice and to be heard. See Art. I, § 9, Fla. Const.
Additionally, the facts in this case are so compelling as to demonstrate that the Berhows' consent to the Crows' petition to adopt Dawn Payne should be required before any judgment of adoption is entered. The "Florida Adoption Act" states that a court may require the consent of any person lawfully entitled to the custody of a minor prior to court approval of an adoption petition. § 63.062(2)(a), Fla. Stat. This provision appears on its face to be discretionary with the court. However, we consider that the inclusion of this provision in the act to be reflective of the legislative recognition that there may be factual circumstances in which the family bond between a minor and persons having custody will be so strong as to require the need for securing the consent of such individuals.
We cannot envision a situation that could be more demonstrative of a family tie  short of a biological tie  than the case at bar.[2] Although the lower court was apparently unaware of the Berhows' existence prior to granting the adoption order, its lack of knowledge does not alter the fact *375 that the Berhows' interest in preserving their family unit of which Dawn is a part is such that their consent to the Crows' adoption petition should be required. § 63.062(2)(a), Fla. Stat. Not to require the Berhows' consent to the adoption of Dawn is, in our judgment, an abuse of discretion.[3]
Because the Berhows' consent to the Crows' adoption of Dawn has not been given, and because they were provided neither with notice nor an opportunity to be heard, we find the Berhows' statutory and constitutional rights have been violated not only by refusing to grant them standing to vacate the lower court's adoption order but also by granting in the first place the adoption order. We are therefore compelled to vacate the order of adoption as it applies to Dawn Payne for three reasons: First, the statutory requirement of consent has not been satisfied. § 63.062(2)(a), Fla. Stat. Second, the statutory requirement of notice has not been followed, because the Crows, having been required to seek the Berhows' consent to the petition to adopt Dawn, were required to give the Berhows notice of the petition to adopt. § 63.122(4)(c), Fla. Stat. Third, in view of the Berhows' aforementioned fundamental interest, the Berhows demonstrated both a constitutional right to notice and to be heard according to the principles delineated by the United States Supreme Court in Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965), involving the review of an order by a Texas court granting an adoption petition filed by a divorced mother and her new husband. Although they knew the location of the child's father, they gave him no notice of the pendency of the adoption proceeding, preferring to rely on a state law excepting consent of the father in a few narrow instances. The Texas court granted the adoption petition. Thereafter the father became aware of the proceeding and promptly filed a motion to set aside the adoption order, which was denied after a hearing.
The United States Supreme Court found that the father had a due process right to notice and an opportunity to be heard. Deprivation of this right could not be cured by a subsequent opportunity to be heard at a hearing on a motion to set aside or vacate an adoption order. The Court's reason for so holding rested on the fact that the father, the mother, and the mother's new husband would all have been on equal footing at the hearing prior to granting the adoption petition, and therefore the mother and her new husband would have "had the burden of proving their case as against whatever defenses the" father might have interposed. Id., 380 U.S. at 551, 85 S.Ct. at 1191. The mother and the new husband were required to offer appropriate evidence that they could satisfy the requisites of the state law in order to adopt the child and to prove why the natural father's consent to the adoption was unnecessary. Failing in their efforts to satisfy these prerequisites, they could not have prevailed in their adoption efforts. Moreover, the father, by being accorded an opportunity only to be heard in regard to his motion to vacate the adoption order, was found to be saddled "with the task of overcoming an adverse decree," thereby shifting the burden of proof. Armstrong, 380 U.S. at 551, 85 S.Ct. at 1191. This did not satisfy due process considerations which require an opportunity to be heard at a meaningful time. Id., 380 U.S. at 552, 85 S.Ct. at 1191.
In the case at bar we candidly acknowledge that we are here confronted with two foster parents seeking to assert their rights while Armstrong involved the adoptee's father. This superficial distinction begs the point. Here, the Berhows have both a constitutional right to notice and an opportunity *376 to be heard at a meaningful time as to the propriety of the Crows' petition to adopt a member of their "family," as well as certain rights accorded them by statute. We fail to see how these rights can be meaningfully furnished them by our holding only that they possess the standing to seek vacation of the order, with the result that they are then faced with overcoming the hurdle of setting aside a presumptively valid adoption decree. Armstrong "persuasively directs" that we vacate the lower court's adoption order as it pertains to the adoption of Dawn.
The lower court's order finding that the Berhows did not have standing to move to vacate the adoption order is REVERSED as it applies to Dawn Payne, and the lower court's order granting the Crows' petition to adopt is VACATED insofar as it concerns Dawn Payne.[4] The two orders are otherwise AFFIRMED.
SHIVERS, J., concurs.
WENTWORTH, J., concurs specially.
WENTWORTH, Judge, concurring specially.
I concur in the majority opinion insofar as it concludes that, in the circumstances of this case, appellants have standing to move to vacate the Florida adoption decree. I would remand the cause for the circuit court's determination as to the merits of the issues presented in appellant's motion, under the applicable statutes.
NOTES
[1] Although Brian Payne was a party to the motion seeking a vacation of the lower court's adoption order, he did not join as an appellant in this appeal, and we do not consider his interests in this opinion.
[2] It should be observed that a foster parent's showing of a fundamental liberty interest in preserving a "familial relationship" does not automatically require a court to obtain consent from such parent as a prerequisite to granting a petition for adoption under Section 63.062(2)(a), Florida Statutes. Rather, as the nature of the foster parent/child's "familial relationship" becomes closer and stronger, so as to approach the level of the relationship between natural parents and their offspring, so too do the rights of the foster parents to preserve that relationship.
[3] Somewhat to the contrary is Modacsi v. Taylor, 104 So.2d 664 (Fla. 1st DCA 1958), which suggests neither notice to nor consent of a child's legal custodian is required in an adoption proceeding under any circumstances. The continuing vitality of this case is questionable, since it was based on former Chapter 72, Florida Statutes, which has been significantly altered by the present statutes. See Ch. 63, Fla. Stat. Further, the Modacsi court did not have the reasoning in the twin Drummond opinions before it, nor did it consider the constitutional ramifications inherent in this type of situation.
[4] The lower court at the time of its initial order was apparently unaware of the pending proceedings in California. The proceedings in Florida would not necessarily have to be stayed or dismissed in favor of pending proceedings in another state, such as California. Nevertheless, notions of comity and the "principle of priority" strongly suggest under the facts of this case that the proceedings should have been stayed or dismissed. See Bedingfield v. Bedingfield, 417 So.2d 1047 (Fla. 4th DCA 1982).