570 So.2d 340 (1990)
In re ADOPTION OF A MINOR CHILD.
Nos. 89-1258, 89-2693.
District Court of Appeal of Florida, Fourth District.
October 10, 1990.
On Motion for Rehearing December 12, 1990.
*341 Harry Gulkin of Harry Gulkin, P.A., Fort Lauderdale, for appellants.
Gerald Mager and Kimberly Hall Doyle of Law Offices of Gerald Mager, P.A., Fort Lauderdale, for appellee.
WARNER, Judge.
These consolidated appeals arise out of hotly contested adoption proceedings in the court below. For the reasons set forth, we dismiss the appeal from the final order of adoption but affirm the order granting intervention in the proceedings to the natural grandparents of the adopted child.
The child, Baby R.R., was born on July 6, 1982. Her mother was unmarried at the birth of the child, but the natural father was identified. After her birth, Baby R.R. and her mother lived with the mother's parents (the Grandparents). When the mother was killed in an automobile accident on October 1, 1984, Baby R.R. continued to live with the Grandparents until the beginning of 1986. At that time, custody of Baby R.R. was given to her natural father, who had sued in a New Jersey court for custody after the mother's death. All the parties here were parties to the proceedings in New Jersey.
A dispute over who should have permanent custody of Baby R.R. continued in New Jersey. Not only were the Grandparents and the father seeking custody, but so were the mother's sister and her husband (hereinafter simply referred to as "the sister"). They also filed a petition for adoption of the child. On January 20, 1988, an order of the Superior Court of New Jersey resolved the dispute by giving custody of Baby R.R. to the sister and the previous petitions for adoption were dismissed without prejudice. The Grandparents were awarded visitation with Baby R.R. The court further indicated that "jurisdiction [would] be retained by the State of New Jersey for all issues concerning and affecting Baby R.R."
On May 11, 1988, the sister, having moved to Florida with Baby R.R., filed a Petition for Adoption in the Circuit Court in Broward County. The sister attached the natural father's written consent to the adoption. She also filed the affidavit required by section 63.135, Florida Statutes (1987). This affidavit informed the court that there had been custody proceedings in New Jersey but asserted that no current proceedings were "pending". The affidavit additionally noted that the Grandparents had "limited visitation rights" under the New Jersey custody order. A copy of the New Jersey order was not filed with the lower court at that time or any time before the entry of the adoption decree. The *342 Grandparents were not notified of the action. The lower court entered a Final Order of Adoption on May 13, 1988.
Shortly thereafter, on June 8, 1988, the sister filed a petition asking the lower court to clarify the adoption decree and to terminate all visitation rights awarded to the Grandparents by the New Jersey court. For the first time, a copy of the New Jersey order was filed with the lower court. The Grandparents learned of the Florida adoption proceedings when they received a copy of this clarification motion. The state of New Jersey responded to this motion challenging the Florida adoption proceeding and claiming that the New Jersey judgment was entitled to full faith and credit.[1] It does not appear from the record that the motion has ever been heard.
The Grandparents later simultaneously filed a notice of appeal of the Final Judgment of Adoption and an Emergency Motion for Intervention in the proceedings. On May 15, 1989, an alternate judge heard the emergency motion but denied it without prejudice and without addressing the merits of the motion. Since the appeal had already been filed, the alternate judge concluded it lacked jurisdiction to hear the motion. After this court temporarily relinquished jurisdiction, the lower court heard the emergency motion and granted the same. The sister appeals the order granting the Grandparent's Emergency Motion for Intervention. These appeals have been consolidated.

I. APPEAL FROM THE FINAL JUDGMENT
The first issue to be addressed is the timeliness of the appeal from the final judgment itself. The final judgment of adoption was rendered May 13, 1988. The notice of appeal was filed May 12, 1989, one year later. Appellants point to section 63.182, Florida Statutes (1987) as authority for the filing of this appeal one year after the judgment was rendered.
Appeal and validation of judgment. After 1 year from the entry of a judgment of adoption, any irregularity or procedural defect in the proceedings is cured, and the validity of the judgment shall not be subject to direct or collateral attack because of any irregularity or procedural defect. Any defect or irregularity of, or objection to, a consent that could have been cured had it been made during the proceedings shall not be questioned after the time for taking an appeal has expired.
However, we do not interpret "direct" attack as authorizing the filing of a direct appeal in excess of thirty days after rendition. According to the Florida Constitution, Article V, Section 2(a), provides that the Supreme Court shall adopt rules of procedure in all courts, "including the time for seeking appellate review." Matters of practice and procedure within the authority of the Supreme Court may not be exercised by the Legislature. Military Park Fire Control Tax Dist. No. 4 v. DeMarois, 407 So.2d 1020, 1021 (Fla.4th DCA 1981). Florida Rule of Appellate Procedure 9.110(b) requires that appeals from final orders shall be filed within thirty days of rendition of the order sought to be reviewed. Therefore, the direct appeal from the final judgment is untimely and must be dismissed.

II. APPEAL FROM ORDER OF INTERVENTION
On May 15, 1989, the Grandparents filed their motion to intervene.[2] The purpose of the motion was not only to intervene for purposes of appeal but also to enforce their visitation rights. The allegations of the motion are sufficient to raise the procedural validity of the adoption proceedings. Also, there are allegations which are tantamount to an allegation that the sister committed a fraud on the Florida court by failing to disclose the substance of the New Jersey proceedings. Such allegations, *343 if true, might also permit the setting aside of the final decree. Therefore, within a year from the final judgment of adoption, the Grandparents moved to intervene to attack directly the final judgment or, alternatively, to enforce visitation rights. The trial court granted the motion authorizing them "to intervene, to seek relief from the Final Judgment of Adoption, enforce their visitation rights, and otherwise proceed as parties to this cause." The sister appeals the order of intervention claiming that the Grandparents have no standing to assert any rights in these proceedings.
Florida Statute Section 63.0425 (1987) provides:
63.0425 Grandparent's right to adopt.  (1) When a child who has lived with a grandparent for at least 6 months is placed for adoption, the agency or intermediary handling the adoption shall notify that grandparent of the impending adoption before the petition for adoption is filed. If the grandparent petitions the court to adopt the child, the court shall give first priority for adoption to that grandparent.
The Grandparents claim that since the child had lived with them for in excess of six months, they were entitled to notice of the adoption proceedings and therefore have standing to intervene in these proceedings. Independent of the statute the Grandparents claim that they had a significant relationship to protect and that due process entitled them to be heard on the issues. Thus, the trial court did not abuse its discretion in ordering intervention. The sister, on the other hand, claims there was no duty on their part to notify the Grandparents, nor were they entitled to any notice or preference under Florida Statute 63.0425.
The sister claims that under Florida Statute section 63.0425 notification of grandparents is only required in "agency" or "intermediary" adoptions and that the adoption of Baby R.R. was not handled in that manner. While an "agency" adoption within the statute is easily defined as an adoption handled by a child placing agency licensed by the Department, it is not as easy to determine whether or not this adoption has been handled by an "intermediary."[3] An "intermediary" is defined in section 63.032(8), Florida Statutes (1987):

Intermediary means an attorney or physician who is licensed or authorized to practice in this state or, for purpose of adoptive placements of children from out of state with citizens of this state, a child-placing agency licensed in another state that is qualified by the department.
Thus, according to the statute, an attorney handling an adoption is an intermediary. The sister, however, claims that her attorney was not acting as an "intermediary" but simply as her legal representative in court in this "independent" adoption. She points to various other sections of the adoption statute which indicate that an intermediary is one actively involved in the placement and is in fact the initiating force in placement of children. The sister's argument that this was an independent adoption, and therefore the attorney handling the petition was not an intermediary, is not supported by the rules of the Department of Health, Education and Welfare Rule 10M-8.007 "Independent Adoptions  Report of Intended Placement  Notice" which states:

An attorney or physician licensed or authorized to practice in Florida, or any other person who is qualified by the Department may serve as an intermediary in an independent adoption.

What we conclude from this is that an independent adoption is an adoption which does not proceed through a licensed agency. We can find no other legislatively recognized distinction between "intermediary" adoptions and "independent" adoptions as suggested by the sister. More on point is her contention that when the attorney is acting only as her legal representative and not as an independent party in arranging placement of a minor, the attorney is not *344 an intermediary. However, no such distinction is set forth in the statutory definition. The statute simply says that "intermediary means an attorney." Thus, if we were to substitute "attorney" for "intermediary" in section 63.0425(1), Florida Statutes (1987), it would be clear that the attorney was required to notify the Grandparents. Where the language of a statute is clear and unambiguous, the courts should give effect to the plain language employed. State ex rel Florida Jai Alai, 112 So.2d 825 (Fla. 1959).[4]
The sister next argues that the child was not "placed for adoption." She contends that this is yet another reason why the notice requirements of section 63.0425(1), Florida Statutes (1987) do not apply. Again, the statute itself refutes this argument. Section 63.032(9), Florida Statutes states:
(a) "To place" or "placement" means the process of a person giving a child up for adoption and the prospective parents receiving and adopting the child, and includes all actions by any person or agency participating in the process (emphasis supplied).
The statute uses the word "process". It contemplates a continuum of activity which begins when the person (parent) evinces an intent to give the child up for adoption and concludes with the final judgment of adoption. The legislature added this definition in 1987 at the same time it enacted section 63.0425, Florida Statutes. See Laws of Florida 87-397. Prior to that time the statute defined placement as only "the process of giving or transferring possession or custody" of a child by any person to another for adoption. Under the older definition, the sister's argument may have been correct, since the sister had already received the child at the time the adoption petition was filed. However, the new statute continues "placement" through the adoption proceeding itself. Thus, under the facts of this case the child was being "placed for adoption" when the petition for adoption was filed, and the attorney was a person participating in the process. Therefore the attorney was an intermediary who participated in the placement of Baby R.R. for adoption. Consequently, notice was required to be given, and the Grandparents, having failed to receive such notice, have standing to intervene to assert their right.
Moreover, the very purpose of Florida Statute 63.0425 was to expand the rights of Grandparents in connection with adoptions. Contrary to the contention of appellants, the statute gives the Grandparents here priority consideration to adopt. See Davis v. Dixon, 545 So.2d 318 (Fla.3d DCA 1989), rev. denied, 551 So.2d 460 (Fla. 1990). Only two situations are exempt from the requirements of the statute: (1) if the deceased parent has indicated a different preference by will, and (2) in stepparent adoptions. Fla. Stat. §§ 63.0425(2) & (3) (1987). Neither exception applies in this case. It is not logical to afford this right to the Grandparents, if they are not entitled to notice of proceedings for adoption in which they are entitled to priority.
Finally, even absent the statutory requirements, we would still hold that the trial court did not abuse its discretion in permitting intervention on the authority of In Interest of M.L.M., a child, 528 So.2d 54 *345 (Fla.1st DCA 1988), and Ramey v. Thomas, 382 So.2d 78 (Fla.5th DCA 1980), both cases with which we agree.
Affirmed.
POLEN, J., concurs.
HERSEY, C.J., concurs specially with opinion.
HERSEY, Chief Judge, concurring specially.
While I do not agree with the characterization of the sister's attorney as an intermediary within the meaning of the applicable statute, I agree with the result on this issue and the rationale of the remainder of the opinion, and therefore I concur.

ON MOTION FOR REHEARING
PER CURIAM.
We deny rehearing but recognize that the issues which we addressed in this case are issues of great public importance. We therefore certify the following questions to the Supreme Court:
(1) Is an attorney who represents the relative of a deceased parent on a petition for adoption of the deceased parent's child an intermediary within the definition of section 63.032(8)?
(2) Are grandparents entitled to notification and preference in adoptions pursuant to section 63.0425, Florida Statutes, where the adoption is handled by the attorney for a petitioner-relative, but the adoption is not exempted under either § 63.0425(2) or (3)?
HERSEY, C.J., and WARNER and POLEN, JJ., concur.
NOTES
[1] When the sister's actions were brought to the attention of the New Jersey court, an order was issued finding her and her husband in contempt of court and declaring that the Florida adoption decree was "null and void" and would have no force or effect in the State of New Jersey.
[2] This was legally within the one year period since May 13, 1986, fell on a Saturday.
[3] Appellee's reliance on National Adoption Counseling Service, Inc. v. State, Department of Health and Rehabilitative Services, 480 So.2d 250 (Fla.4th DCA 1985), is misplaced as the definition of "intermediary" has been amended by the legislature since that case was decided.
[4] Although the courts should not adhere to the literal meaning when it is clearly contrary to legislative intent, we cannot find that the literal interpretation is clearly contrary to legislative intent. For instance, section 63.092(1), Florida Statutes (1987), provides that intermediaries are to report to the Department of Health and Rehabilitative Service any intended placements of minors for adoption with any person not a stepparent or not related within the third degree, if intermediaries have knowledge of, or participate in, such intentions to place. The converse of that is that intermediaries don't have to report stepparent adoptions. This gives added support to the construction that any attorney participating in an adoption is an "intermediary," since stepparent adoptions would not be situations where an attorney is operating as an independent placing agent. Furthermore, we note that in this case notice was given to the Department. In addition, the attorney for the sister filed an affidavit of expenses as is required by an intermediary in section 63.132, Florida Statutes (1987). Finally, an attorney is always contacted by either the natural parent or the adoptive parent in adoption proceedings because by definition an attorney is someone's legal representative. Therefore, the attorney is always acting for someone else and not in an independent capacity.