593 So.2d 185 (1991)
In re ADOPTION OF A MINOR CHILD.
No. 77133.
Supreme Court of Florida.
December 12, 1991.
Rehearing Denied March 5, 1992.
*186 Marina Garcia Wood and William L. Gardiner, III, of Patterson, Maloney & Gardiner, Fort Lauderdale, for petitioner.
Carol C. Murphy, Lakeland, for respondent.
BARKETT, Justice.
We have for review In re Adoption of a Minor Child, 570 So.2d 340, 345 (Fla. 4th DCA 1990), in which the district court certified the following questions of great public importance:[1]
(1) Is an attorney who represents the relative of a deceased parent on a petition for adoption of the deceased parent's child an intermediary within the definition of section 63.032(8)[, Florida Statutes (1987)]?
(2) Are grandparents entitled to notification and preference in adoptions pursuant to section 63.0425, Florida Statutes, where the adoption is handled by the attorney for a petitioner-relative, but the adoption is not exempted under either § 63.0425(2) or (3)[, Florida Statutes 1987)]?
Neither question is capable of an answer in the abstract as the appropriate response depends on the facts of the particular case. In this case, we find the relative's attorney was not an intermediary within the definition of section 63.032(8) and the grandparents were not entitled to notice of the adoption under section 63.0425(1). Nevertheless, we find the grandparents were entitled to notice of the adoption under the due process clause of the Florida Constitution.
Respondents are the maternal grandparents of Baby R.R. They seek to intervene to set aside the adoption decree obtained by petitioners, Baby R.R.'s maternal aunt and uncle (hereinafter sister), because they failed to receive notice of the adoption proceedings.
Baby R.R. was born in New Jersey on July 6, 1982, to an unmarried mother. Baby R.R. and mother lived with the mother's parents in New Jersey until the mother died in a car accident on October 1, 1984. Baby R.R. continued to live with the grandparents until January 18, 1986, when a New Jersey court awarded custody to Baby R.R.'s natural father. Meanwhile, the grandparents petitioned for adoption as did the mother's sister and her husband. On January 20, 1988, the Superior Court of New Jersey gave custody of Baby R.R. to the sister, a resident of Florida, and awarded visitation to the grandparents. The New Jersey court dismissed without prejudice *187 both the petitions for adoption but retained jurisdiction for "all issues concerning and affecting" the child.
On May 11, 1988, the sister filed a petition for adoption in the Circuit Court for Broward County with the natural father's written consent and filed the affidavit required by section 63.135, Florida Statutes (1987).[2] The affidavit informed the court of the substance of the New Jersey decree but did not advise that the New Jersey court had retained jurisdiction. The grandparents were not given notice of the adoption proceeding. The final order of adoption[3] was entered two days later on May 13, 1988.
On June 8, 1988, the sister filed a motion for clarification of judgment of adoption seeking to terminate all visitation rights awarded to the grandparents. For the first time, a copy of the New Jersey decree was filed with the circuit court. The grandparents learned of the Florida adoption proceedings when they received the motion for clarification. On May 12, 1989, within one year of the final judgment,[4] the grandparents simultaneously filed a notice of appeal of the final judgment of adoption in the district court and an emergency motion for intervention in the trial court.
The trial court granted the motion to intervene and the sister appealed, claiming that the grandparents did not have standing to assert any rights in the adoption proceedings. The district court dismissed the grandparents' direct appeal of the final judgment of adoption because it had not been filed within the requisite 30-day period under Florida Rule of Appellate Procedure 9.110(b). However, the district court affirmed the trial judge's decision permitting the grandparents to intervene and to attempt to set aside the final judgment of adoption.[5]
*188 The pivotal issue presented in this case is whether the grandparents were entitled to notice of the adoption proceeding in the first instance. The sister contends that notice to grandparents is required only under certain statutorily prescribed circumstances which are not present in this case and, therefore, the grandparents have no standing to intervene after the judgment of adoption.
Section 63.0425(1), Florida Statutes (1987), provides:
When a child who has lived with a grandparent for at least 6 months is placed for adoption, the agency or intermediary handling the adoption shall notify that grandparent of the impending adoption before the petition for adoption is filed. If the grandparent petitions the court to adopt the child, the court shall give first priority for adoption to that grandparent.
(Emphasis added.) The sister argues that Baby R.R. was not "placed for adoption" and that neither she nor her attorney was an "intermediary handling the adoption" within the meaning of the statute. Thus, the sister concludes, notice to the grandparents was not required under the statute.
Section 63.032(8), Florida Statutes, (1987), defines "intermediary" as
an attorney or physician who is licensed or authorized to practice in this state or, for the purpose of adoptive placements of children from out of state with citizens of this state, a child-placing agency licensed in another state that is qualified by the department.
The grandparents argue that the plain meaning of section 63.032(8) defines intermediary as any attorney involved in an adoption proceeding. The sister contends that the term "intermediary" within the adoption statute refers to someone who acts as a broker between prospective adoptive parents and the natural parents or legal custodian of the child and that every attorney representing a party in an adoption proceeding does not automatically become an intermediary.[6] If one were to look only to the word "intermediary," the grandparents' argument might have merit. However, we must look at the entire phrase "intermediary handling the adoption" within the context of the phrase "placed for adoption" as the phrases are used in section 63.0425(1). The precise question is: Who is to be considered an "intermediary handling the adoption" when a child is "placed for adoption" within the meaning of section 63.0425(1)?
Under the grandparents' interpretation, the words "attorney" and "intermediary" would be interchangeable wherever they appear in the statute. We believe that this reading gives unintended breadth to section 63.0425(1).[7] Throughout chapter 63, attorneys and intermediaries are treated as separate entities by the various provisions of the statute.[8] For instance, section 63.097, Florida Statutes (1987), regarding approval of fees to intermediaries, uses the words "attorney" and "intermediary" in the disjunctive, providing in part that "[a]ny fee, including intermediary or attorney fees over $1,000 ... must be approved by the court." Moreover, the statute gives to intermediaries duties and responsibilities beyond that which would be expected of an attorney who is merely representing one party in an adoption proceeding. See, e.g., § 63.085, Fla. Stat. (1987) (providing detailed rules for the disclosure of information by intermediaries handling an adoption); id. § 63.212(3) (making it unlawful for an intermediary to fail to file the requisite reports); id. § 63.212(4) (making it unlawful *189 for an intermediary to charge a fee in excess of $1,000).
Because other sections of the statute envision an intermediary as someone who plays a special role in an adoption and because the legislature clearly had the ability to, and did in fact, distinguish between intermediaries and attorneys in other portions of the statute, we find the sister's understanding of the term intermediary more in harmony with the statutory scheme.
Moreover, the plain wording of section 63.0425 is clearly inapplicable to the facts of the present case. Baby R.R. was not "placed for adoption" by an "intermediary handling the adoption" within the ordinary meaning of those words. The adoption proceedings began with Baby R.R. in the custody of the sister; she was not "placed" there by a person or agency except in the context of the custody awarded by the New Jersey court. The sister's attorney was merely the legal representative hired to file the necessary pleadings to effectuate the adoption. He did not find a child for adoption or negotiate the terms of an adoption between the adoptive and natural parents. It is doubtful that the legislature intended to label every such legal representative of a party to an adoption an intermediary. Under these facts, the sister's attorney was not an "intermediary handling the adoption" within the meaning of section 63.0425.
However, the determination that notice was not statutorily required is not dispositive of the issue. Notice to legally interested parties so that they can assert their claims is the essence of the procedural due process protections provided by the Florida Constitution. Art. I, § 9, Fla. Const. As the United States Supreme Court has said:
An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.
Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).
There is no question in this case that the grandparents were legally interested parties. Under the New Jersey court order the grandparents were given visitation rights, and, therefore, if for no other reason, acquired a legal interest in maintaining a relationship with Baby R.R.[9] That legal interest clearly entitled the grandparents to notice of the prospective adoption and standing to intervene in the proceedings. Art. I, § 9, Fla. Const.; accord Brown v. Meekins, 278 Ark. 67, 643 S.W.2d 553, 554 (1982); cf. Berhow v. Crow, 423 So.2d 371, 372-73 (Fla. 1st DCA 1982) (holding that the nature of the relationship between a child and foster parents created a fundamental due process liberty interest in the foster parents such that they were entitled to notice and a meaningful opportunity to be heard in adoption proceedings by the child's maternal grandparents); Ramey v. Thomas, 382 So.2d 78, 81-82 (Fla. 5th DCA) (holding that grandparents with court-ordered visitation rights have standing to attack an adoption judgment obtained through concealment of material facts), review denied, 389 So.2d 1116 (Fla. 1980); accord Quarles v. French, 272 Ark. 51, 611 S.W.2d 757, 759 (1981).
Having decided that the grandparents are entitled to notice and can intervene, the remaining question concerns the appropriate relief. Intervention is the procedure by which third persons, not originally parties to a lawsuit but claiming an interest in the subject matter, enter the case to protect their rights or to interpose a claim. See Singletary v. Mann, 157 Fla. 37, 43-44, 24 So.2d 718, 722-23 (1946); Daugherty v. Latham, 139 Fla. 477, 491-92, 190 So. 742, 748 (1939). Intervention is governed by Florida Rule of Civil Procedure 1.230 which provides:

*190 Anyone claiming an interest in pending litigation may at any time be permitted to assert his right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by the court in its discretion.
The general rule is that intervention is impermissible after a final decree has been entered. Wags Transp. Sys. v. City of Miami Beach, 88 So.2d 751, 752 (Fla. 1956); Dickinson v. Segal, 219 So.2d 435, 437 (Fla. 1969). The exception to the rule is that postjudgment intervention should be permitted if the interests of justice so require. Wags Transp. Sys., 88 So.2d at 752; Dickinson v. Segal, 219 So.2d at 437-38; Williams v. Nussbaum, 419 So.2d 715, 717 (Fla. 1st DCA 1982). This exception, however, is limited to permitting intervention by affected persons so that an appeal can be taken. Henry P. Trawick, Jr., Florida Practice and Procedure § 4-9, at 41-42 (1986); see, e.g., Wags Transp. Sys., 88 So.2d at 752; Dickinson v. Segal, 219 So.2d at 436; Williams v. Nussbaum, 419 So.2d at 716. The problem in this case is that the adoption proceedings are no longer pending. Indeed, final judgment was rendered almost one year before the grandparents moved to intervene.[10] Thus, in order to obtain any relief, i.e., to have the opportunity to assert their rights, if any, in the adoption proceedings, the grandparents must first vacate the final judgment of adoption.
The grandparents are within the one-year period permitted by section 63.182, Florida Statutes (1987), to attack a final judgment.[11] Florida Rule of Civil Procedure 1.540(b) governs the procedure for setting aside final judgments.[12] Under this rule, a final judgment can be set aside upon the "misrepresentation or other misconduct of an adverse party."
From the time of the mother's death, the custody of Baby R.R. has been hotly contested. The sister in this case has litigated against the grandparents in New Jersey. The sister knew the New Jersey court had fashioned a custody and visitation scheme which included and integrated the grandparents and had retained jurisdiction to enforce and/or modify the custody and visitation rights. Failing to notify the grandparents of the adoption petition under these circumstances constitutes "misconduct of an adverse party" under rule 1.540(b). Thus, if pursued, the grandparents' motion to vacate the final judgment of adoption must be granted.[13]
To rule otherwise would severely diminish the grandparents' right to have been heard in the first instance. The sister's failure to provide notice should not penalize the grandparents by forcing them into the procedural posture of having to first vacate the judgment before being afforded the opportunity to participate in the proceedings. Vacating the judgment is the only *191 meaningful way to afford the grandparents due process of law. See Armstrong v. Manzo, 380 U.S. 545, 551, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965); Berhow v. Crow, 423 So.2d at 376.
We recognize the practical impact this decision has on the families involved and on Baby R.R. However, we must ensure that when courts are deciding these issues in the first instance, they have all of the pertinent information and appropriate parties before them. The sister in this case took a calculated risk in failing to notify the grandparents of this adoption. The grandparents chose to wait almost a year before challenging the lack of notice. It is unfortunate that Baby R.R. must bear the consequences of these choices. This case underscores the great ironies of family relationships and family law. Once again we observe the inability of those seeking possession of children to consider the childrens' interests first. It is not, of course, within the reach of this Court's power to make people care for and about their children more than they selfishly care for winning the contest to possess them. As long as the courts are the battlefield, however, we can assure that the courts do not lose sight of the object of the contest. This is not easy to do in the adversarial context, especially when all the parties are usually represented except the subject of the struggle.
We approve the decision of the district court to the extent that it is consistent with the views expressed herein. We remand to the district court with instructions to remand the case to the circuit court to proceed in accordance with this opinion.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution.
[2] Section 63.135, Florida Statutes (1987), provides:

(1) Each party in an adoption proceeding involving a child over the age of 6 months, in the first pleading or in an affidavit attached to that pleading, shall give information under oath as to the child's present address, the places where the child has lived within the last 5 years, and the names and present addresses of the persons with whom the child has lived during that period. In the pleading or affidavit each party shall further declare under oath whether:
(a) He has participated as a party or witness or in any other capacity in any other litigation concerning the custody of the same child in this or any other state;
(b) He has information of any custody proceeding concerning the child pending in a court of this or any other state; and
(c) He knows of any person not a party to the proceedings who has physical custody of the child or claims to have custody or visitation rights with respect to the child.
(2) If the declaration as to any item specified in subsection (1) is in the affirmative, the declarant shall give additional information under oath as required by the court. The court may examine the parties under oath about details of the information furnished and other matters pertinent to the court's jurisdiction and judgment of adoption.
(3) Each party has a continuing duty to inform the court of any custody proceeding concerning the child in this or any other state about which he obtained information during this proceeding.
[3] The actual court order in this case is captioned "Final Order of Adoption." The statute, however, uses the term "judgment of adoption." § 63.142, Fla. Stat. (1987). We will use the latter term throughout the opinion.
[4] The record does not indicate why one year intervened between the filing of the motion for clarification by the sister and the grandparents' appeal.
[5] The final judgment of adoption was rendered on May 13, 1988. The grandparents filed the notice of appeal on May 12, 1989, and the motion to intervene on May 15, 1989.

Section 63.182, Florida Statutes (1987), provides:
After one (1) year from the entry of a judgment of adoption, any irregularity or procedural defect in the proceedings is cured, and the validity of the judgment shall not be subject to direct or collateral attack because of any irregularity or procedural defect. Any defect or irregularity of, or objection to, a consent that could have been cured had it been made during the proceedings shall not be questioned after the time for taking an appeal has expired.
The district court correctly found that any "direct" attack of the judgment must occur within thirty days in accordance with Florida Rule of Appellate Procedure 9.110(b). The district court was also correct in interpreting section 63.182 to allow an interested party to collaterally attack a final judgment within one year of its rendition. The motion to intervene was legally within the one-year period for filing because May 13, 1989, was a Saturday.
[6] Intermediary is defined as "[a]n arbitrator or mediator. A broker; one who is employed to negotiate a matter between two parties, and who for that purpose may be an agent of both." Black's Law Dictionary 815 (6th ed. 1990).
[7] It appears that in providing a definition of intermediary in section 63.032(8), Florida Statutes (1987), the legislature was actually attempting to define which persons could act as intermediaries in adoptions, i.e., licensed attorneys, licensed physicians, etc., and was not attempting to alter the ordinary legal definition of the word intermediary.
[8] This is not to say that an attorney cannot also be an intermediary. There is no evidence in this case, however, that the sister's attorney was acting in such a dual capacity.
[9] We do not address whether grandparents would be entitled to notice of an impending adoption in the absence of a court order.
[10] See supra note 5.
[11] Id.
[12] Florida Rule of Civil Procedure 1.540(b) provides:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, decree, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial or rehearing; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment or decree is void; (5) the judgment or decree has been satisfied, released or discharged or a prior judgment or decree upon which it is based has been reversed or otherwise vacated or it is no longer equitable that the judgment or decree should have prospective application. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, decree, order or proceeding was entered or taken. A motion under this subdivision does not affect the finality of a judgment or decree or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, decree, order or proceeding or to set aside a judgment or decree for fraud upon the court.
(Emphasis added.)
[13] It is unclear from the grandparents' motion whether they wish to vacate the adoption. Accordingly, we do not vacate the judgment of adoption here, but leave it to the trial court should the grandparents so move.