755 So.2d 753 (2000)
S.J. and I.J., by and through their legal guardians, M.W. and D.B., Appellants,
v.
W.L. and L.L., Appellees.
No. 4D99-2724.
District Court of Appeal of Florida, Fourth District.
March 29, 2000.
*754 Pamela Wynn, Lake Worth, for appellants.
Kenneth G. Spillias of Lewis, Longman & Walker, P.A., West Palm Beach, and Richard Barlow of Kibbey & Barlow, Stuart, for appellees.
TAYLOR, J.
In this appeal by a minor child's siblings from a trial court's order denying their motion to set aside an adoption, the main issue is whether the siblings had standing to challenge the adoption. The trial court concluded that they did not. We agree and affirm the order denying the siblings' motion to set aside the adoption.
In April 1997 the appellees filed a verified petition to adopt "J.K.L." At the time, J.K.L. had been living in foster care with appellees for most of her 4½ years. She was first placed in appellees' home when she was four days old due to her natural mother's drug problems. Although the mother resumed the care and custody of J.K.L. for brief periods, each time the mother relapsed into drug dependency, the mother or maternal grandmother requested appellees to take J.K.L. back. In June 1994 the court granted temporary legal custody to appellees, with whom J.K.L. remained until the time of the adoption hearing in November 1997.
During the period from June 1994 and November 1997, the court held numerous dependency and mediation proceedings and reviewed reports submitted by the guardian ad litem and social workers that J.K.L. was doing well and thriving in appellees' care. Although mediation orders provided for visitation between J.K.L. and her siblings, mother, and grandmother, such contacts were minimal. In January 1997 the mother died.
The putative father, who had not visited or supported the minor child since birth, could not be found prior to or during the November 1997 hearing, despite diligent efforts by appellees and the Department of Children and Families to locate him. He was served by publication. The maternal grandmother attended the adoption/termination hearing with counsel and participated in the hearing. She had custody of J.K.L.'s brother and had cared for him since his birth. J.K.L.'s other sibling lived in Dade County with a maternal aunt. Both placements were pursuant to a Palm Beach County dependency ruling. At the hearing the maternal grandmother requested the trial court to allow her and the siblings to have visitation with J.K.L. after the adoption. The court reserved jurisdiction to determine whether or not it had *755 authority to award visitation to the maternal grandmother and the siblings.
On March 23, 1998, the trial court issued a final order granting the adoption and terminating the father's parental rights. On April 21, 1998, the putative father appealed from the final adoption order, arguing that the St. Lucie circuit court lacked jurisdiction to proceed with the adoption because of an ongoing earlier filed dependency action in Palm Beach County, and, alternatively, because he was not properly served with notice of the adoption proceedings. Four months later, a suggestion of the putative father's death was filed. This court dismissed the deceased father's appeal as moot and denied the siblings' motion to relinquish jurisdiction for the appointment of appellate counsel for the purpose of intervening in the father's appeal.
Following the dismissal of the father's appeal, the siblings moved to set aside the order granting the adoption, relying upon the arguments made by the father before his death rendered his appeal moot. Appellees objected to the motion on standing grounds. The trial court ruled that the siblings lacked standing to contest the adoption, and, alternatively found that removing the child from her adoptive home would not be in her best interest. On the standing issue, the trial court stated:
Section 63.062, Florida Statutes, sets out the requirements for who may be required to consent to an adoption. A sibling's consent is not required. Rule 1.230, Fla. R. Civ. P. permits anyone claiming an interest in pending litigation to assert a right by intervention. The interest must be direct and immediate. A showing of indirect, inconsequential or contingent interest is wholly inadequate. A sibling, thus, does not have standing to contest an adoption. See also J.R. and A.R. v. R.M. and S.M., 679 So.2d 64 (Fla. 4th DCA 1996) where a parent whose parental rights have been terminated has no standing to contest. Unlike In re Adoption of a Minor Child, the siblings have not acquired a legal interest in maintaining a relationship with the child based upon a prior court order. In Re: at 593 So.2d 185 (Fla. 1991).
We find no error in the trial court's conclusion that the minor child's siblings lacked standing to contest the adoption. The court reasoned that the siblings' consent to the adoption was not required under the adoption statute and properly determined that the minor child's siblings did not establish the requisite interest to permit their intervention into the adoption proceedings. Florida Rule of Civil Procedure 1.230 provides that "[a]nyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention...." In Stefanos v. Rivera-Berrios, 673 So.2d 12, 13 (Fla.1996), the Florida Supreme Court applied the intervention rule to adoption proceedings, stating:
Generally, the interest which entitles a person to intervene must be shown to be in the matter in litigation. The interest must be direct and immediate and the intervenor must show that he or she will gain or lose by the direct legal operation and effect of the judgment. A showing of indirect, inconsequential or contingent interest is wholly inadequate.
In In re Adoption of a Minor Child, 593 So.2d 185 (Fla.1991), the supreme court found that the grandparents seeking to intervene to set aside an adoption judgment were legally interested parties. The court ruled that the grandparents acquired their legal interest under a New Jersey court order awarding them visitation rights. In this case, the siblings argue that section 63.022(1), Florida Statutes, confers legal status on them in that it sets forth the Legislature's intent to "maintain sibling groups."[1] However, the *756 first district rejected such interpretation of the statute, finding that the legislative statement in section 63.022 was a general statement of intent to guide HRS, not a standing provision. See Florida Dep't of Health and Rehabilitative Services v. Doe, 659 So.2d 697 (Fla. 1st DCA 1995), rev. denied, 668 So.2d 602 (Fla.1996).
In Doe, the appellate court quashed an intervention order entered by the trial court and held that a couple was not entitled to intervene in an adoption proceeding that involved the half sibling of their adopted child. The court found that because the children had never lived together, there was no sibling relationship to maintain. Similarly, in this case, the trial court found that the siblings, who had never lived together and rarely visited under a mediated visitation schedule, had not established a familial relationship sufficient to give them a direct legal interest for standing to intervene and set aside the adoption. Moreover, unlike the Doe intervenors, the maternal grandmother, through whom the siblings brought this action, did not express a willingness to raise the three siblings together or adopt them.
With respect to the jurisdiction and service of process issues raised by the natural father before his death and adopted by the siblings as a basis for challenging the adoption, we find no merit in these points on appeal and affirm.
Finally, we find no error in the trial court's determination that the best interests of the child did not favor setting aside the adoption. In its order, the court noted its obligation to enter orders it deems necessary and suitable to promote and protect the best interest of the child. Citing Simmons v. Pinkney, 587 So.2d 522 (Fla. 4th DCA 1991), Matter of Adoption of Doe, 543 So.2d 741 (Fla.1989), and Rushing v. Bosse, 652 So.2d 869 (Fla. 4th DCA 1995), the court determined that removing the minor child "from the home in which she has spent the majority of her life would clearly not be in her best interest."
Before concluding, we note that the court expressed its concern that the siblings, who asserted a desire for visitation with the adopted minor, have an opportunity to get to know each other in the future. Given the adopted minor's statutory right under section 63.0427 to "have the court consider the appropriateness of postadoption communication or contact, including, but limited to, visits, letters and cards, or telephone calls, with his or her sibling who are not included in the petition for adoption," we do not foreclose the opportunity of the adoption court to consider whether the child's best interests will be served by future communication or contact with her siblings.
WARNER, C.J., concurs.
FARMER, J., concurring specially with opinion.
FARMER, J., concurring.
While I concur in the affirmance, I find it necessary to comment about this issue of standing. In my judgment, standing in an in rem action (such as adoption) is not quite the same thing as it is in an in personam proceeding where the party seeking to intervene must line up on one side or the other. In this kind of in rem case, there might not be clearly defined "sides" because there may be no true adversary to the principal issue to be decided as regards the res. In the case in point, although the siblings may not be heard to *757 object to the adoption itself, they do present an entirely separate question as to whether they can be heard to have the court consider continued communication and contact with their sibling after the adoption becomes final.
It is clear that a final order of adoption severs all legal relationships between the adopted child and her blood relatives. See § 63.172(1)(b), Fla. Stat. (1999). On the other hand, section 63.0427 also provides that:
"A child ... who is the subject of a petition for adoption under this chapter, shall have the right to have the court consider the appropriateness of postadoption communication or contact, including, but not limited to, visits, letters and cards, or telephone calls, with his or her siblings who are not included in the petition for adoption."
§ 63.0427(1), Fla. Stat. (1999). Although this statute points from the perspective of the adopted child, that is undoubtedly a function of the fact that the child to be adopted is the focus of both the statute and the adoption proceeding. It is the child to be adopted over whom the court has direct jurisdiction, not the siblings of the child.
I note that while the statute creates this interest of continuing contact among siblings, the adoption laws do not identify siblings as being entitled to notice of the adoption. See § 63.122(4), Fla. Stat. (1999) (notice of hearing on adoption shall be given to DCFS or licensed child-placing agency, an intermediary, a person whose consent to the adoption is required unless excused by court, and any person withdrawing consent). Nor is the consent of siblings required for the adoption itself. See § 63.062(1), Fla. Stat. (1999) (unless excused consent required by mother, father and child if over age of 12).
Still the legislature has said that it intends in its adoption laws "whenever possible, to maintain sibling groups." [emphasis supplied] § 63.022(1), Fla. Stat. (1999) ("It is the intent of the Legislature to protect and promote the well-being of persons being adopted and their birth and adoptive parents and to provide to all children who can benefit by it a permanent family life, and, whenever possible, to maintain sibling groups."). Even though these children of drug addicted parents had little or no experience as a conventional family, by itself that hardly means that they should have no right to have the adoption court consider whether future contacts among the siblings would be in their best interests. Indeed, the statute does not speak of continuing contacts but only "postadoption communication or contact." If the statute's contacts are only those after adoption, it hardly seems relevant whether there were contacts before adoption. Hence, focusing only on the statutory text, I would deem irrelevant whether the children had any history of communicating or contact, at least as regards the distinct question whether the siblings themselves can raise the issue of future contacts.
I think that section 63.0427 carries over a corresponding interest of the adopted child's siblings to have the court consider future contacts after the adoption is final. I begin with the understanding that the adopted child clearly has this statutory right to have the court consider post adoption contact between the siblings. The right in question is an associational right i.e., an interest in having some future connection with the adoptee's siblings. An association is a linkage of some kind between two or more people. An associational right is necessarily reciprocal: A has the right to associate in some way with B; it corresponds with a right of B to associate with A. If B has no right to associate with A, A's associational right is meaningless as regards B. One is useless without the other.
Thus, I construe section 63.0427 to create an associational interest among biological siblings, at least to the extent of having the court presiding over the adoption of one of them to consider the subject of *758 continued contact among them even after the adoption has theoretically cut off all other legal rights they had as brothers and sisters. To me it does not seem to matter that the sibling being adopted has not thought to raise the question of such future contacts. In many instances, it will be entirely understandable that the adopted child does not raise it at all, because of the child's infancy or the disinclination of foster or adopting parents to do so. That capacity and disinclination hardly yield a conclusion that the siblings therefore lack standing to raise it themselves. The legislative goal here is, as the text indicates, to keep sibling groups acquainted to the extent that the best interests of one or more of them would suggest.
For these same reasons, I would not follow Florida Dep't of Health & Rehabilitative Services v. Doe, 659 So.2d 697 (Fla. 1st DCA 1995), rev. denied, 668 So.2d 602 (Fla.1996). In that case, adoptive parents sought to intervene in the adoption proceedings concerning the half-sibling of their adopted child. The trial court allowed them to intervene, but on review the First District reversed, saying:
"We reject [the adoptive parents] interpretation of [section 63.022(1)] as conferring legal status on them for several reasons. Under the facts of this case, where the children have never lived together, there is no sibling relationship to maintain. The legislative statement contained in section 63.022(1) is a general statement of legislative intent to guide HRS and does not provide a basis for legal standing."
659 So.2d at 699.
The rationale of the Doe court just has to be wrong. If the child to be adopted were newly born and immediately placed with the adoptive parents-to-be, there obviously could not be any history of living together with biological siblings "to provide a basis for legal standing." In truth, the statute looks not to the past contacts, if any, among the biological siblings but instead to the future possibility of such contacts. And while it is true that section 63.022 is merely a statement of legislative intent and does not purport in so many words to "provide a basis for legal standing," that same construction cannot be said of section 63.0427, which does provide such a basis.
The Doe court has not explained how an adoption judge could try to maintain sibling groups if the siblings cannot be heard and the adoptive child is herself incapable of raising the issue. The construction I suggest does enable the judge to comply with this clear legislative goal. Recognizing standing in the siblings themselves at least to raise the issue creates a possibility otherwise lackingof "maintain[ing] sibling groups," as the statute says. See § 63.022(1) ("It is the intent of the Legislature... whenever possible, to maintain sibling groups.") [emphasis supplied] The recognition of sibling standing is thus more faithful to both the statutory text and the legislative purpose than is Doe's wooden rejection of it.
For these reasons, I agree that the denial of relief from the adoption judgment under rule 1.540(b) is without prejudice to the siblings to petition the adoption court as to the limited subject of possible future contacts, recognizing of course that whether such contacts are in the best interests of the child being adopted is for the trial court to decide in the first instance.
NOTES
[1] Section 63.022(1), Florida Statutes (1997), provides that it is the intent of the Legislature to protect and promote the well-being of persons being adopted and their birth and adoptive parents and to provide to all children who can benefit by it a permanent family life, and, whenever possible, to maintain sibling groups. See also § 39.001(k), Fla. Stat. (1997) (providing that the Department should make every possible effort, when two or more children who are in the care or under the supervision of the Department are siblings, to place the siblings in the same home; in the event of permanent placement of the siblings, to place them in the same adoptive home or, if the siblings are separated, to keep them in contact with each other).