673 So.2d 12 (1996)
Thomas A. STEFANOS, et ux., Petitioners,
v.
Nelson RIVERA-BERRIOS, Respondent.
No. 85248.
Supreme Court of Florida.
February 15, 1996.
Rehearing Denied April 25, 1996.
Heidi M. Tauscher of Heidi M. Tauscher, P.A., Orlando, for Petitioners.
Barry Apfelbaum of Barry Apfelbaum, P.A., Orlando, for Respondent.
GRIMES, Chief Justice.
We have for review Rivera-Berrios v. Stefanos, 649 So.2d 881 (Fla. 5th DCA 1994), which certified the following question to be one of great public importance:
MAY ONE WHO HAS HAD HIS PARENTAL RIGHTS TERMINATED THEREAFTER INTERVENE IN AN ONGOING ADOPTION PROCEEDING AND CONTEST FOR THE ADOPTION OF HIS CHILD?
*13 Id. at 882. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the question in the negative.
Nelson Rivera-Berrios (Rivera) had his parental rights terminated in the juvenile division of the circuit court (juvenile court) because of neglect and abandonment. Thereafter, Thomas and Brigitte Stefanos filed a petition in circuit court to adopt the child. Rivera filed a motion to intervene in the adoption proceeding and filed an objection to the Stefanoses' petition. Because he had also filed a motion in the juvenile court to vacate the final judgment terminating his parental rights, the circuit court stayed the adoption proceedings pending final disposition of Rivera's motion. The juvenile court denied Rivera's motion to vacate the final judgment. In a per curiam decision without opinion, the Fifth District Court of Appeal affirmed the juvenile court's order denying the motion.
Rivera next filed a supplemental motion to intervene and assert a cross-claim for adoption. This motion was denied under the doctrines of res judicata, collateral estoppel, and estoppel by judgment. On appeal, the district court of appeal reversed and remanded, holding that one whose parental rights have been terminated may thereafter contest for the adoption of his or her child. The court held that res judicata did not apply because a termination proceeding is a different cause of action from an adoption proceeding. The court further held that estoppel by judgment (or collateral estoppel) also was not available because the previous action had not determined Rivera's present fitness to adopt.
At the outset, we note that an order of termination of parental rights permanently deprives the parents or legal guardian of any right to the child. § 39.469(2)(b), Fla.Stat. (1991). Any rights the natural parent may have had to the child are permanently forfeited and cannot be reopened by means other than a proper appeal. The order denying Rivera's motion to vacate the judgment of termination of his parental rights was affirmed on appeal by the district court and we must accept that court's decision. Rivera-Berrios v. Adoption Centre, Inc., 617 So.2d 1067 (Fla. 5th DCA 1993), review dismissed, 623 So.2d 494 (Fla.1993).
Despite the permanency of a termination order, a parent whose parental rights have been terminated is not precluded from establishing new rights to his or her child through independent adoption proceedings. Section 63.042(2)(b), Florida Statutes (Supp. 1992) allows an unmarried adult to adopt, including the birth parent of the person to be adopted. See, e.g., In re T.G.T., 433 So.2d 11 (Fla. 1st DCA 1983) (permitting mother of child who was permanently committed in a dependency proceeding to petition for adoption of her child upon rehabilitation); Green v. State Dep't of Health & Rehabilitative Servs., 412 So.2d 413 (Fla. 3d DCA 1982) (holding that termination of the natural parents' rights by commitment proceedings does not foreclose their right to seek adoption pursuant to chapter 63, Florida Statutes (1979)). However, the ability of a parent to petition for the adoption of his or her child after termination of parental rights is a different issue from that of the parent's ability to intervene in an ongoing third-party adoption proceeding.
Florida Rule of Civil Procedure 1.260 provides that anyone claiming an interest in pending litigation may be permitted to assert a right by intervention. Generally, the interest which entitles a person to intervene must be shown to be in the matter in litigation. The interest must be direct and immediate and the intervenor must show that he or she will gain or lose by the direct legal operation and effect of the judgment. A showing of indirect, inconsequential or contingent interest is wholly inadequate. Faircloth v. Mr. Boston Distiller Corp., 245 So.2d 240, 244 (Fla.1970).
In In re Adoption of a Minor Child, 593 So.2d 185 (Fla.1991), we concluded that a child's natural grandparents were entitled to intervene in the child's adoption proceedings as legally interested parties. We determined that the grandparents had acquired a legal interest in maintaining a relationship with their grandchild based upon a New Jersey custody order issued earlier that year granting them visitation rights. Intervention in the adoption proceeding allowed them to protect *14 these rights which might have been terminated by the adoption order.
Contrasted with In re Adoption of a Minor Child is the case before us. As one whose parental rights have been terminated through judicial proceedings, Rivera has no direct interest which may be affected by the adoption proceedings because his parental rights no longer exist. He stands as a stranger to the proceedings, and the fact that he is the child's biological father is now legally irrelevant. As such, he has no standing to intervene in a third-party adoption proceeding involving the child.
Our holding is consistent with section 63.062(4), Florida Statutes (Supp.1992), which states that if parental rights to a minor have previously been terminated, then only the consent of the licensed child-placing agency handling the adoption is required.[1]Id.; see also § 39.47(1), Fla.Stat. (1991); § 63.072(2), Fla.Stat. (1991). Thus, the Legislature has determined that one whose parental rights have been terminated does not have a sufficient interest in the matter to warrant requiring his or her consent for the child's adoption. Likewise, we believe that once parental rights to a child have been terminated, the parent also lacks the legal interest necessary to establish standing to intervene and contest for the adoption of the child.
We answer the certified question in the negative and quash the decision of the district court of appeal.
It is so ordered.
OVERTON and WELLS, JJ., concur.
HARDING, J., concurs with an opinion.
SHAW, J., concurs in part and dissents in part with an opinion.
ANSTEAD, J., dissents with an opinion, in which KOGAN, J., concurs.
HARDING, Justice, concurring.
I agree with the majority that a parent whose parental rights have been terminated has no right to intervene in an ongoing adoption proceeding brought by someone else. I write separately to address the position advocated by the dissent.
As the majority notes, an order of termination of parental rights permanently deprives the parents or legal guardian of any right to the child. Majority op. at 13; see also § 39.469(2)(b), Fla.Stat. (1991). Thus, upon termination of parental rights, the biological parent becomes, in effect, a legal stranger to the child because the parent has no direct interest that may be affected by the adoption proceeding. Majority op. at 13-14.
Parental rights can only be terminated under certain circumstances. See § 39.464, Fla.Stat. (1991) (grounds for termination of parental rights include voluntary relinquishment, abandonment, severe or continuing abuse or neglect, and egregious abuse). Certain procedural safeguards also apply to termination proceedings: Affected parties must be served notice and a copy of the petition for termination of parental rights. § 39.462(1), Fla.Stat. (1991). Parents have the right to have counsel present at each stage of the proceeding; the court appoints counsel for insolvent persons. § 39.465(1), Fla.Stat. (1991). An advisory hearing is held in order to inform the parties of their rights under section 39.465. § 39.466, Fla.Stat. (1991). The need for termination of parental rights must be established by clear and convincing evidence at an adjudicatory hearing. § 39.467(1), Fla.Stat. (1991). The judge must enter a written order explaining the relevant findings of fact and conclusions of law. § 39.467(7), Fla.Stat. (1991). Any party involved in the proceeding who is affected by the order of the court may appeal to the appropriate district court of appeal. § 39.473, Fla.Stat. (1991). Thus, Florida law does not take the termination of parental rights lightly and provides adequate due process safeguards.
The dissent asserts that Rivera is caught in the "ultimate Catch 22" because, although he can establish new rights to his child through independent adoption proceedings, he does not have the legal interest necessary *15 to establish standing to intervene in this ongoing adoption proceeding. Dissenting op. at 17. However, Rivera stands in the same position as anyone else who is a legal stranger to this child. While most individuals are eligible to adopt a child to whom they are a legal stranger, see section 63.042(2), Florida Statutes (1991), they have no right to intervene in someone else's adoption proceeding with that child. The fact that Rivera is the biological father is legally irrelevant: his parental rights were terminated in accord with the established procedure and that decision was affirmed on appeal.
To permit intervention by this biological parent whose parental rights have been terminated would have one of two effects: either it would give the biological parent who has been adjudicated a legal stranger a preference over other legal strangers that is not now provided by law; or it would open the door to intervention by anyone. Either result would significantly undermine the stability of legal proceedings dealing with the termination of parental rights and adoption proceedings.
Therefore, when a decision to terminate parental rights becomes final, we cannot permit the ruling to be revisited in the guise of intervention in another person's petition for adoption. Moreover, if we permit intervention in an adoption proceeding by parties who do not have the legal interest necessary to establish standing to intervene and contest for the adoption of the child, we run the risk of turning the proceeding into a protracted tug of war between competing prospective parents.
Clearly, a law that would create such a morass would not be in the best interest of this or any child. I do not think that this should be the law.
SHAW, Justice, concurring in part, dissenting in part.
I agree with the result reached by the majority but disagree strongly with the rule of law announced in this casei.e., that once parental rights have been terminated, the parent "stands as a stranger to the [third-party adoption] proceedings, and the fact that he [or she] is the child's biological [parent] is now legally irrelevant." Majority op. at 14. This rule of law, in my opinion, turns a blind eye toward human nature.
Courts since time immemorial have recognized the sanctity of the natural parent/child bond:
[W]e nevertheless cannot lose sight of the basic proposition that a parent has a natural God-given legal right to enjoy the custody, fellowship and companionship of his offspring. This is a rule older than the common law itself and one which had its inception when Adam and Eve gave birth to Cain in the Garden of Eden.
State ex rel. Sparks v. Reeves, 97 So.2d 18, 20 (Fla.1957) (citation omitted).
Simply because a parent's rights have been terminated does not mean that the parent is a "bad" person who can never be a fit parent. Though not terminated lightly, parental rights may be terminated for reasons falling far short of abject abuse or abandonment. See § 39.464, Fla.Stat. (1991). In fact, parental rights can be terminated under relatively benign circumstances. Id. (Grounds for termination include among others: 1) "The parent [may] voluntarily execute[] a written surrender of the child;" 2) "[t]he identity or whereabouts of the parent or parents are unknown and cannot be ascertained by diligent search within 60 days;" or 3) the parent may fail "to substantially comply with [a] performance agreement or permanent placement plan.").
Additionally, the circumstances initially justifying termination can always change: An unknowing natural father may be located or voluntarily come forward when he learns of his child's existence; a seemingly impossible economic or family situation can take an upturn; a physical or mental illness may go into remission or respond unexpectedly well to treatment; or a longstanding drug or alcohol problem can be overcome. In short, a scenario that once looked hopeless to a parent or court can change dramatically.
To hold, as the majority does, that a natural parent in such a situation has no more right to his or her child in a third-party adoption proceeding than does a total stranger defies logic and ignores one of the strongest *16 forces in naturethe biological bond that ties natural parent and childa force often stronger than the will to live itself. To say that a natural parent is no closer to his or her own child than a stranger is specious particularly when the parent and child may share the same eyes and hair, have identical gestures and mannerisms, and embrace an unconditional love for one another.
Forcing a natural parent, who may be a completely fit and capable parent, to stand by helplessly in judge-made handcuffs while his or her child is given away to others is a scenario befitting a Shakespearean tragedynot a modern day Florida courtroom. For this Court to cut such a harsh rule from whole cloth with no direction whatsoever from the legislature is ill-advised.
I would hold that a natural parent whose rights to a child have been terminated may intervene in a third-party adoption proceeding involving that child where the parent can demonstrate a reasonable basis for asserting the right to adopt the child. Though few parents whose rights have been terminated would meet this standard and far fewer still would prevail, to deny natural parents this opportunity is to strip an otherwise merciful proceeding of its humanity.
I concur in the result reached by the majority because Rivera cannot show a reasonable basis for asserting the right to adopt the child in light of the juvenile court's recent order reaffirming termination. Prior to issuing that order, the court afforded Rivera a full opportunity to argue his case at an evidentiary hearing. The final order denying relief contains extensive findings of fact and was affirmed on appeal.
Accordingly, I agree with the end result reached by the majority but object strongly to the rule of law announced in this case.
ANSTEAD, Jistice, dissenting.
I would approve the unanimous opinion of the district court permitting the respondent to proceed on his cross-petition for adoption in the adoption proceedings initiated by the petitioners. The district court opinion succinctly summarizes the situation before us:
The issue properly before the adoption judge was whether the natural father has been sufficiently "rehabilitated" so that he may now contest for the adoption of his child. See In Interest of T.G.T., 433 So.2d 11 (Fla. 1st DCA 1983).
We are required by our earlier decision to recognize that the father was derelict in failing to pay medical bills for the birth of his child and support for the child (even though the mother admits that she led him to believe she had had an abortion) and that this lack of support justified a finding of neglect and abandonment. Even so, the adoption court must now determine if the father's subsequent, very public declaration of his desire to assume all future financial responsibility for the child and his exhaustion of every conceivable legal remedy to do just that has now evinced a resolute, firm and settled purpose to assume his parental duties. The adoption court must further determine whether these actions demonstrate that "no matter what derelictions originally caused the loss of parental rights, there has been a rehabilitation to the point where parental suitability and fitness have reached a level sufficient to warrant adoption." Green, 412 So.2d at 415.
We acknowledge that the passage of time required by these proceedings is harmful to everyone. As children grow older, bonding occurs and new directions are difficult. Because of that, the legislature should, consistent with due process, impose strict time standards with expedited hearings and appeals in these types of action. Even so, it does not appear that the father is responsible for the delay, and he is entitled to a fair hearing on the merits of his petition.
Rivera-Berrios v. Stefanos, 649 So.2d 881, 882 (Fla. 5th DCA 1994).
The majority initially recognizes the right of respondent to seek adoption of his natural child despite the fact that his prior legal rights to the child have been terminated. Logically, that would seem to end our task here since any further determination as to the adoption of respondent's child would ordinarily be determined as an issue of fact, *17 with the petitioners and respondent each entitled to attempt to demonstrate their suitability as parents and that it would be in the best interests of the child for them to assume parental responsibilities. But, surprise, what the majority gives with the right hand it magically takes away with the left.
Having pronounced that "[d]espite the permanency of a termination order, a parent whose parental rights have been terminated is not precluded from establishing new rights to his or her child through independent adoption proceedings," the majority then incongruously concludes: "Likewise, we believe that once parental rights to a child have been terminated, the parent also lacks the legal interest necessary to establish standing to intervene and contest for the adoption of the child." Majority op. at 13, 14. This is the ultimate Catch 22.
Apparently, the majority is holding that the first qualified person to file for adoption wins. Presumably, if the respondent had filed a petition first, then petitioners, whose standing is no greater than respondent's, would have no standing "to intervene and contest for the adoption of the child." None of this makes any sense. If a child is fortunate enough to have a number of persons seeking to be his parent, the courts should be open to carefully consider all of their positions and then to do what's right for the child. I think that's the law.
KOGAN, J., concurs.
NOTES
[1] The Stefanoses obtained such consent in this proceeding.