POLSTON, J.,
dissenting.
I agree that the trial court properly denied the appellant’s motion to consolidate. I also agree that appellant (“GP/Mother”) does not have a priority preference for adoption under section 63.0425(1), Florida Statutes (1999), because the purpose of the statute is to give a preference to grandparents who have established a relationship with the child after birth. Nevertheless, I respectfully dissent because I believe that GP/Mother should have been permitted to intervene. The lack of a statutory priority interest does not cause GP/Mother to have no interest at all. Florida intervention law, the child’s constitutional rights, and GP/Mother’s constitutional rights as a mother of a minor child, support GP/Mother’s intervention.

Florida Intervention Law

The Florida Supreme Court, in Stefanos v. Rivera-Berrios, 673 So.2d 12 (Fla.1996), stated that an intervenor in an adoption proceeding must have an interest that is “direct and immediate” and “show that he or she will gain or lose by the direct legal operation and effect of the judgment.” 673 So.2d at 13. The court held that a biological father who previously had his parental rights terminated could not intervene in an adoption proceeding because he was a legal stranger.
In the instant case, GP/Mother is not in the same legal posture as the father in Stefanos because the father’s legal rights had already been terminated for neglect and abandonment, and he was therefore a *575 legal stranger. GP/Mother is not yet a legal stranger, but a successful conclusion of this adoption proceeding will result in her becoming a legal stranger without an opportunity to be heard. Section 63.172(l)(b), Florida Statutes (1999) states that a judgment of adoption terminates all legal relationships between the adopted person and the adopted person’s relatives, including the birth parents. (Emphasis added). This termination is a loss to GP/Mother by the direct legal operation and effect of the adoption judgment. Therefore, under Stefanos, GP/Mother should be permitted to intervene.
GP/Mother is more in the posture of the grandparents in In re Adoption of a Minor Child, 593 So.2d 185 (Fla.1991), than the father in Stefanos. In Minor Child, the Court determined that, “if for no other reason,” the grandparents had legal rights through a New Jersey court order granting them visitation rights. 593 So.2d at 189. The Court in Stefanos, distinguishing Minor Child, recognized that the grandparents’ rights from the New Jersey court order would be terminated by the adoption order, as contrasted to the natural father’s rights which had already been terminated. 673 So.2d at 13-14. The complete termination of all GP/Mother’s rights from this proceeding is as significant as the New Jersey court order recognized by the Florida Supreme Court that sufficiently conveyed intervention status to the grandparents.
This Court recognizes that a child’s relationship with a grandparent has sufficient legal significance to justify intervention in an adoption proceeding. In the Interest of M.L.M., 528 So.2d 54, 56 (Fla. 1st DCA 1988)(intervention by grandparents in adoption proceeding affirmed; the child’s relationship with paternal grandparents was at stake). See also Ramey v. Thomas, 382 So.2d 78, 81-82 (Fla. 5th DCA 1980) (“law of Florida recognizes substantial rights between grandparent and grandchild”; the adoption would sever and cut off any relationship with grandparents; grandparents had sufficient interest to seek relief from judgment of adoption); cf. In re Interest of Kayle C. & Kylee C., 253 Neb. 685, 574 N.W.2d 473, 477-478 (1998) (grandparents entitled to intervene in dependency proceeding because they will realize significant loss by direct operation of judicial determinations that would terminate the relationship between grandparent and grandchild).
The Fourth District Court of Appeal, in J.R. v. R.M., 679 So.2d 64 (Fla. 4th DCA 1996) and C.S. v. S.H., 671 So.2d 260 (Fla. 4th DCA 1996), ruled that adoptive parents had a sufficient legal interest to give them intervenor status, arising from the Department of Health and Rehabilitative Services’ approval as parents. The court in J.R. stated that “[petitioners’ interest is direct and immediate; their interests would be directly and adversely affected by the outcome of the foster parents’ pending adoption proceeding.” 679 So.2d at 65 (emphasis added). Similarly, in C.S., the court upheld the biological relatives’ intervention in an adoption proceeding, stating:
As a preliminary matter, the foster parents contest the biological relatives’ standing to bring this appeal. The biological relatives were permitted to intervene in both the injunction action and the adoption proceedings below. They are blood relatives approved as adoptive parents by HRS. Their interests would be directly and adversely affected if we were to approve the final judgment of adoption. The biological relatives have a direct interest in the outcome of this appeal and thus, have standing to bring this appeal. See Fla.R.Civ.P. 1.230; Union Cent. Life Ins. Co. v. Car *576 lisle, 598 So.2d 505 (Fla.1992); In re Adoption of a Minor Child, 593 So.2d 185 (Fla.1991); cf. Stefanos v. Rivera-Berrios, 678 So.2d 12 (Fla.1996).
671 So.2d at 265 (emphasis added). GP/Mother’s interest is direct and immediate and her interests will be directly and adversely affected by the outcome of this proceeding, just as the unrelated persons in J.R. and the relatives in C.S., who were approved by HRS.
Because I would rule that Florida law permits GP/Mother to intervene, I would not reach her argument that the trial court’s denial of her intervention violates her federal constitutional rights. However, I will briefly address the majority’s analysis of her constitutional claims because I disagree.

Constitutional Analysis

There are three competing constitutional interests present in this case: (i) those of GP/Mother that arise because she is the mother of her minor daughter, not because she is the grandparent of the child, (ii) those of the minor child-bearing daughter as the mother of the child, and (iii) those of the child. Appellees properly phrase the issue: “Whose rights trump whose?”
The answer is that the child’s rights trump those of the terminating minor parent and those of GP/Mother. Florida law is settled that the interest of the child is the primary consideration of an adoption proceeding. Ramey v. Thomas, 382 So.2d 78, 80-81 (Fla. 5th DCA 1980) (“In an adoption proceeding, as well as any other kind of proceeding regarding the custody of a child, the primary issue is the best-interest and welfare of the child. Harden v. Thomas, 329 So.2d 389 (Fla. 1st DCA 1976), In re Adoption by Cooper, 242 So.2d 196 (Fla. 1st DCA 1970); In re Vincent’s Adoption, 219 So.2d 454 (Fla. 1st DCA 1969).”).
Because the child’s interests are most important, the court should make its best effort to base its judgment on all of the pertinent facts elicited during hearings. A grandparent may have pertinent facts to present to the court that would justify intervention. In re Adoption of Melanie Lynn Hess, 386 Pa.Super. 301, 562 A.2d 1375 (1989)(reversed to permit grandparents intervention in adoption proceedings; refusing to permit intervention denied children their right to have their best interests determined upon consideration of all relevant facts). A grandparent should be permitted to intervene if she presents relevant facts to determine the child’s best interests, which are constitutionally protected. U.S. Const. Amend. XIV (“nor shall any State deprive any person of life, liberty, or property, without due process of law”); Art. I, § 2, Fla. Const. (“All natural persons, female and male alike, are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, ... ”).
The majority holds that the constitutional rights of the minor daughter are sufficiently greater than those of GP/Mother to bar GP/Mother from intervening. The majority agrees that the “Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.” However, citing Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), the majority then decides that the minor daughter’s right to make decisions about her child’s care, custody, and control, including the right to give the child up for adoption by somebody other than GP/Mother, bar GP/Mother’s efforts to intervene.
In Troxel, grandparents were granted visitation rights that were contrary to the *577 ■wishes of the parents. The Court held that the Washington statute at issue unconstitutionally infringed on the parents’ fundamental right to rear their children. However, Troxel does not control the outcome of this case. Unlike the instant case, there were no competing federal constitutional rights present in Troxel. A right under the federal constitution is far superi- or to one arising from legislation. Rights under legislation may be eliminated by courts if the legislation is held unconstitutional. In contrast, federal constitutional rights may be balanced, but not eliminated. GP/Mother’s rights, as a mother, are constitutional rather than statutory and cannot be eliminated as in Troxel. GP/Mother’s constitutional rights as a parent of a minor do not cease to exist just because that minor had a child.
The various visitation cases cited by the majority, relating to the ability of the parents to control the raising of their own children, are not applicable. The minor daughter is giving up her rights to rear the child and is placing the responsibility and privileges of the child in the hands of others. There is no expectation of continued involvement by the terminating parent with the child that will be interfered with, as is present in visitation cases. Accordingly, the minor daughter’s constitutional rights are either eliminated because of her voluntary relinquishment, becoming a legal stranger as the father in Stefanos, or at the least her rights are greatly diminished in comparison to the other competing constitutional interests.
Therefore, the constitutional rights of the child and GP/Mother as a parent of a minor child, support GP/Mother’s intervention in this case without a priority interest. Although I believe that GP/Mother has the right to intervene and be heard, I make no comment on the merits of her claim. The trial court would be free to rule in favor of appellees and to terminate all rights of the grandparent through the adoption judgment, if appropriate.

Conclusion

There are many complex social and public policy issues surrounding the intervention of grandparents into adoption proceedings. However, these issues are best left to the legislature to determine. I believe that the current state of Florida law permits GP/Mother to intervene as a grandparent without a priority interest. Moreover, the child’s constitutional rights, and GP/Mother’s constitutional rights as a mother of a minor child, support GP/Mother’s intervention. Accordingly, I respectfully dissent.