843 So.2d 898 (2003)
N.S.H. etc., Petitioner,
v.
FLORIDA DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Respondent.
No. SC02-261.
Supreme Court of Florida.
April 3, 2003.
*899 Ryan Thomas Truskoski, Orlando, FL, for Petitioner.
Charles D. Peters, Orlando, FL, for Respondent.
PARIENTE, J.
We have for review N.S.H. v. Department of Children & Family Services, 803 So.2d 877 (Fla. 5th DCA 2002), a decision of the Fifth District Court of Appeal on the following question, which the court certified to be of great public importance and which we have rephrased:
ARE THE ANDERS[1] PROCEDURES APPLICABLE TO CRIMINAL CASES *900 TO BE FOLLOWED IN CASES INVOLVING TERMINATION OF PARENTAL RIGHTS?[2]
We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We conclude that Anders procedures do not apply to termination of parental rights cases and, therefore, answer the rephrased certified question in the negative.

The Anders Framework
In 1967, the United States Supreme Court decided Anders and held that counsel appointed to represent an indigent criminal defendant could not withdraw from representation during the appeal by merely advising the appellate court in a letter that the appeal had no merit. See 386 U.S. at 744, 87 S.Ct. 1396. The Anders case was part of "a continuing line of cases [that had] reached [the United States Supreme] Court concerning discrimination against the indigent [criminal] defendant on ... first appeal." Id. at 741, 87 S.Ct. 1396. In order to protect the indigent criminal defendant's right to appellate counsel established in Douglas v. California, 372 U.S. 353, 357-58, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), the Supreme Court set forth a procedure to be used in those cases where appointed counsel determines an appeal to be "wholly frivolous":[3]
[I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the courtnot counselthen proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.
Anders, 386 U.S. at 744, 87 S.Ct. 1396 (emphasis supplied).
In 1971, this Court adopted the precise procedure set forth in the original Supreme Court opinion in Anders for criminal appeals in this state. See State v. Wooden, 246 So.2d 755, 757-58 (Fla.1971), abrogated on other grounds, State v. District Court of Appeal, 569 So.2d 439, 442 (Fla.1990); see also In re Anders Briefs, 581 So.2d 149 (Fla.1991). The Supreme Court has since clarified that the procedure set forth in Anders is "merely one method of satisfying the requirements of the Constitution for indigent criminal appeals." *901 Smith v. Robbins, 528 U.S. 259, 276, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).
Although this Court has not yet reevaluated its current Anders procedures in light of Smith, this Court recently extended the use of the Anders procedure to appeals of involuntary civil commitment to a mental health facility where an individual's physical liberty is at stake. See Pullen v. State, 802 So.2d 1113, 1120 (Fla.2001). The issue now before us is whether this Court should mandate Anders procedures in termination of parental rights appeals, which would require the appellate court to conduct an independent review of the record in cases where appointed counsel has concluded that an appeal would be frivolous.

Analysis
In this case, the Fifth District granted the appointed attorney's motion to withdraw from representation of a parent in a termination of parental rights case, after that attorney determined in good faith that there were no valid issues to appeal and that any appeal would be frivolous. See N.S.H., 803 So.2d at 878-79. However, in light of this Court's opinion in Pullen, the Fifth District certified the question to this Court as to whether the Anders procedures should be followed in termination of parental rights proceedings.
Before our decision in Pullen, those district courts of appeal addressing the issue had concluded that the Anders procedure for criminal appeals was not applicable to termination of parental rights cases. In Ostrum v. Department of Health & Rehabilitative Services, 663 So.2d 1359 (Fla. 4th DCA 1995), the Fourth District held that "the full panoply of Anders procedures" is unnecessary in the appellate review of these cases. 663 So.2d at 1361. The Fourth District also found that the need to resolve issues involving the legal status of children quickly and to refrain from unduly burdening the caseload of the appellate courts weighed against imposition of the more time consuming Anders procedures. See id. The Second, Third, and Fifth Districts have likewise declined to extend Anders to termination of parental rights cases. See In re K.W., 779 So.2d 292, 294 (Fla. 2d DCA 1998); In re J.A. 693 So.2d 723, 724 (Fla. 5th DCA 1997); Jimenez v. Dep't of Health & Rehabilitative Servs., 669 So.2d 340, 341 (Fla. 3d DCA 1996). We agree with the district courts of appeal that Anders procedures should not be mandated in termination of parental rights cases.
The Anders decision addressed the specific issue of the indigent criminal defendant's right to a meaningful first appeal. See 386 U.S. at 741-42, 87 S.Ct. 1396. N.S.H. has cited no research, and we are unaware of any research, that indicates that the same concerns in criminal appeals that led to the Anders decision are present today, more than thirty years later, in termination of parental rights proceedings so as to mandate comparable appellate oversight.
As stated above, the Anders procedures adopted in this state require that counsel set forth in a brief "anything in the record that might arguably support the appeal." Wooden, 246 So.2d at 758 (quoting Anders, 386 U.S. at 744, 87 S.Ct. 1396). These procedures then require "the court... after a full examination of all the proceedings, to decide whether the case is wholly frivolous." Id. at 758, 87 S.Ct. 1396 (quoting Anders, 386 U.S. at 744, 87 S.Ct. 1396). Absent the compelling concerns expressed by the United States Supreme Court in Anders, we cannot justify thrusting appellate courts into a position that represents a departure from the court's traditional role as a neutral decision maker. As the Fourth District aptly observed:

*902 Anders represents a radical departure from the traditional role of appellate judges as neutral decision makers without bias or prejudice for or against any party. Instead, it turns them into advocates for the party whose counsel seeks to withdraw. Whatever may be the rationale for requiring that departure from neutrality in criminal cases, we are quite unwilling to allow it in purely civil matters.
Ostrum, 663 So.2d at 1361; see also In re Anders Briefs, 581 So.2d at 151 (stating that once a motion to withdraw is filed and the defendant is given the opportunity to file a pro se brief, "[t]he appellate court... assumes the responsibility of conducting a full and independent review of the record").
Although we do not minimize the significant interests at stake in parental rights termination proceedings, the essential difference between termination proceedings and both criminal proceedings and civil commitment proceedings is that termination proceedings do not involve the risk of loss of physical liberty. Further, there are two interests that must be weighed in a termination proceeding: that of the parent and that of the child.[4] The Fourth District recognized both of these distinguishing factors in Ostrum when it noted that termination of parental rights "cases are not criminal in nature. They are civil proceedings which happen to affect the substantial interests of the parents and children involved." 663 So.2d at 1361.
In addition, the records in termination of parental rights cases are often extensive and extremely fact-based.[5] This contrasts with the typical case in a criminal Anders appeal[6] and with this Court's observation in Pullen as to the civil commitment proceeding at issue in that case:
The State noted in both its brief and at oral argument that civil commitment hearings under the Baker Act are "usually brief and factually straightforward" and "[v]ery rarely is the person's mental illness contested." Instead, the State contends, "the most common points on appeal" assert that evidence as to the person's likelihood to harm himself or others does not meet the clear and convincing standard. Thus, we do not agree with the State's contention that the independent appellate court review which is part of the Anders-type procedure will cause an undue burden to the court or result in unnecessary delay.
Pullen, 802 So.2d at 1120. Requiring appellate courts to review extensive fact-based records in termination of parental rights cases to determine whether there are any meritorious issues to appeal would *903 add to both the burden placed on the appellate courts and the delay in bringing the termination of parental rights proceeding to conclusion without a concomitant showing of need to protect the constitutional rights of parents.
Although we recognize that "mere speed of operation and speed for the purpose of expediency," concurring in result op. at 20, do not outweigh other important values of our system of justice, such as a fair opportunity for an indigent parent to pursue a meaningful appeal of an order terminating parental rights, we do not believe that extending Anders procedures to termination of parental rights appeals serves those higher values. Further, considering the three-factor test of Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), we conclude that there is no due process violation in failing to require that the Anders procedure be followed in appeals from termination of parental rights proceedings.[7]Cf. M.W. v. Davis, 756 So.2d 90, 97 (Fla.2000) ("[T]he extent of procedural due process protections varies with the character of the interest and nature of the proceeding involved.") (quoting In re D.B., 385 So.2d 83, 89 (Fla.1980)). Accordingly, we decline to extend the Anders procedure to termination of parental rights proceedings. We conclude that the procedure is not constitutionally mandated and any potential benefits from the Anders procedure in the context of termination of parental rights proceedings are outweighed by the delay in the disposition of the case and the consequent potential detriment to the child from any additional delay in finalizing the permanent placement of the child.
We next address what procedure should be followed when appointed counsel seeks to withdraw from representation of an indigent parent in a termination of parental rights appeal. The Fourth District adopted the following procedure:
It will be enough for appellate counsel to file a motion seeking leave to withdraw as counsel for the parent whose rights have been terminated.... [W]here appellate counsel seeks leave to withdraw, we can then give the party a period of time in which to argue the case without an attorney. If the party then fails to file a brief within the time period granted for that purpose, we will conclude that the party no longer wishes to prosecute the appeal and dismiss for failure to prosecute. If the party has filed a brief, we will review the brief and if it fails to present a preliminary basis for reversal we will summarily affirm under rule 9.315. When we find that the party's brief presents a preliminary basis for reversal, the case will then proceed as any ordinary appeal.
Ostrum, 663 So.2d at 1361. The procedure enunciated by the Fourth District in Ostrum does not explicitly state that appellate counsel's motion to withdraw must contain a certification that he or she has conducted a conscientious review of the record and could find no meritorious grounds on which to base an appeal. However, we interpreted Ostrum as including this requirement in our decision in Pullen, see 802 So.2d at 1114, and this requirement is consistent with the Fifth District's decision in N.S.H.:

*904 [W]e shall adhere to the Ostrum procedure which requires service of a motion to withdraw on the client, certification in that motion to this court that counsel in good faith has discovered no valid error below, and an opportunity for the client to file a brief on his or her own behalf, or through subsequently retained counsel.
N.S.H., 803 So.2d at 879. Accordingly, we approve the procedures set forth in Ostrum and N.S.H. As to the certification required, we specifically hold that where appellate counsel seeks leave to withdraw from representation of an indigent parent in a termination of parental rights case, the motion to withdraw shall be served on the client and contain a certification that after a conscientious review of the record the attorney has determined in good faith that there are no meritorious grounds on which to base an appeal. The parent shall then be provided the opportunity to file a brief on his or her own behalf.
Based on the foregoing, we answer the certified question in the negative and approve the decision of the Fifth District Court of Appeal.
It is so ordered.
ANSTEAD, C.J., WELLS and QUINCE, JJ., and SHAW, Senior Justice, concur.
LEWIS, J., concurs in result only with an opinion.
HARDING, Senior Justice, dissents.
LEWIS, J., concurring in result only.
This Court has recognized a constitutionally protected interest in the context of juvenile dependency proceedings, and the important fundamental nature of the interest at risk when permanent termination of parental rights might result. We have held that the fundamental interest at stake requires procedural safeguards and the appointment of counsel for indigents under due process considerations commensurate with those granted criminal defendants and individuals subject to civil commitment. See Pullen v. State, 802 So.2d 1113 (Fla.2001); In re D.B., 385 So.2d 83 (Fla. 1980); see also J.B. v. Florida Dep't of Children & Family Servs., 768 So.2d 1060 (Fla.2000). While the right to counsel may flow from, and have its origins in, the Sixth Amendment in the criminal context and concepts of due process under the United States and Florida Constitutions in the dependency arena, the goal to be achieved is the participation of counsel acting as competent counsel. Although it may be argued that the Sixth Amendment right to counsel may be somewhat distinguished from the right to counsel in dependency proceedings flowing from due process considerations, in that the extent of protections may vary with the character of the interest and nature of the proceeding involved, the underlying substantive constitutional requirement of substantial equality and fair process can only be realized when counsel is performing as an active advocate. This Court made no distinctions when it announced the governmental obligation to provide counsel when constitutionally required to do so in the dependency context. See D.B., 385 So.2d at 90-91.
The concept at issue in Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), was a concern with the extent of the duty of court-appointed appellate counsel, and the result was not dictated simply by the source of the appointment. The Anders Court reasoned:
The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae. The no-merit letter and the *905 procedure it triggers do not reach that dignity. Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability.
Id. at 744, 87 S.Ct. 1396 (footnote omitted). The power of Anders, which should be no less controlling here, counsels that:
This procedure will assure penniless defendants the same rights and opportunities on appealas nearly as is practicableas are enjoyed by those persons who are able to afford the retention of private counsel.
Id. at 745, 87 S.Ct. 1396. I do not agree with the majority that the alleged putative administrative burden of Anders-type procedures in the direct appeal of permanent parental rights terminations is so onerous that it must trump fundamental due process constitutional rights. If the rights and interests are identified as deserving the same constitutional protection with the right to appointed counsel, it is the procedure that should be analyzed, not the process denied. I conclude that principles of constitutional consistency should mandate the granting of Anders-type protections in permanent parental rights termination appeals, and would so hold in the instant case. The evil to be addressed is the lack of equality in the process.
The United States Supreme Court has made it clear many times that the "interest of parents in the care, custody, and control of their children ... is perhaps the oldest of the fundamental liberty interests recognized." Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). This interest, which emanates from the fundamental right to privacy, is "among associational rights [the U.S. Supreme] Court has ranked as of basic importance in our society, rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect." M.L.B. v. S.L.J., 519 U.S. 102, 116, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996) (citation and internal quotation marks omitted); see also Moore v. City of East Cleveland, 431 U.S. 494, 503-04, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). We have echoed the pronouncements of the U.S. Supreme Court when deciding cases which concern the fundamental rights of parents with regard to their children. See, e.g., J.B. v. Florida Dep't of Children & Family Servs., 768 So.2d 1060, 1065 (Fla.2000); Von Eiff v. Azicri, 720 So.2d 510, 513 (Fla.1998); In re E.H., 609 So.2d 1289, 1290 (Fla.1992); Padgett v. Dep't of Health & Rehabilitative Servs., 577 So.2d 565, 570 (Fla.1991). Indeed, this Court has noted that Florida's "constitutional right to privacy is much broader in scope, embraces more privacy interests, and extends more protection to those interests than its federal counterpart." Von Eiff, 720 So.2d at 514.
By its very nature, a legal proceeding in which the state seeks to terminate the parental rights of one of its citizens is a direct governmental interference with the fundamental right to be involved with the life of one's child. Thus, the liberty, privacy, and due process interests protected by the United States and Florida constitutions are implicated at every stage during the termination process. Indeed, the state action at issue in the instant case could, and often does, have the ultimate effect of completely severing the constitutionally protected relationship between a parent and child.
Because the interest at stake in parental rights termination proceedings is a fundamental one, heightened procedural safeguards are necessary to ensure that the *906 essential right is not abridged. The Supreme Court has stated, "The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be `condemned to suffer grievous loss.'" Santosky v. Kramer, 455 U.S. 745, 758, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (quoting Goldberg v. Kelly, 397 U.S. 254, 262-63, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)). Because parental rights termination proceedings "seek not merely to infringe [upon the] fundamental liberty interest, but to end it ... few forms of state action are both so severe and so irreversible." Id. at 759, 102 S.Ct. 1388; see also Y.H. v. F.L.H., 784 So.2d 565, 569 (Fla. 1st DCA 2001) (noting that after termination, the parent "stands as a stranger ... and the fact that he is the child's biological father is now legally irrelevant") (quoting Stefanos v. Rivera-Berrios, 673 So.2d 12, 14 (Fla.1996)). Therefore, in my view there is no reason not to afford available procedural protections to safeguard against the rendering of mistaken final judgments.
The Supreme Court has noted that "numerous factors combine to magnify the risk of erroneous factfinding" in termination proceedings. Santosky, 455 U.S. at 762, 102 S.Ct. 1388. Additionally, the Supreme Court has stated:
Permanent neglect proceedings employ imprecise substantive standards that leave determinations usually open to the subjective values of the judge. In appraising the nature and quality of a complex series of encounters among the agency, parents, and the child, the court possesses unusual discretion to underweigh probative facts that might favor the parent.
. . . .
... Given the weight of the private interests at stake, the societal cost of even occasional error is sizable.
Id. at 762-6, 102 S.Ct. 1388 (citations omitted); see also Lassiter v. Dep't of Social Servs., 452 U.S. 18, 30, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). It is plain that parental rights termination proceedings require an extremely subjective evaluation of a very complex relationship between multiple entities and interests. In fact, at the time termination proceedings are commenced, the proceedings involveat a minimumthe judiciary, the parent or parents, the child, and a custodial government agency. Each of these participants may have significantly divergent interests, none of which can always be evaluated objectively.
Moreover, I cannot close my eyes to the fact that the circumstances at issue in termination proceedings could be impacted by insidious bias. The United States Supreme Court has noted: Because parents subject to termination proceedings are often poor, uneducated, or members of minority groups, such proceedings are often vulnerable to judgments based on cultural or class bias. See Santosky, 455 U.S. at 763, 102 S.Ct. 1388. Thus, imposition of the Anders-type procedural safeguards would serve to prevent possible discrimination, purposeful or otherwise.
Under the decisions of the United States Supreme Court, as well as those of this Court, it is undeniable that an essential fundamental liberty interest is at stake in parental rights termination proceedings. In my view, principles of constitutional consistency require that this Court protect the fundamental interest in raising one's children in a fashion coordinate with the procedural safeguards applicable when a citizen's physical liberty is at stake. Because indigent defendants subject to imprisonment and civil commitment benefit from Anders-style review on appeal, so too should parents who cannot afford to hire an appellate attorney to pursue an appeal *907 of the termination of their relationship with their child have Anders-type protections. If the interests of these groups of persons are such as to require appointed counsel at the trial level, the same processes should be applicable at the appellate level to provide Anders-type protection even if we do not impose identical Anders proceedings.
To effect the adequate protection of certain indigent litigants' rights, the federal and Florida courts have long held that those who cannot afford a trial attorney must receive the services of one through court appointment. Currently, when the state endeavors to incarcerate an indigent because of an alleged violation of the criminal laws, seeks to have an indigent civilly committed under the provisions of Florida's Baker Act, or requests that a court terminate the parental rights of an indigent person, that litigant is entitled to the services of court-appointed counsel. At present, however, the protections of Anders-style review at the appellate level only attach in the criminal and civil commitment scenarios. I would act today to rectify this inconsistency, and grant Anders-type procedural protections to indigent parents pursuing an appeal of an adverse result at trial as those appealing criminal convictions and civil commitment orders. Because the law demands no less, I conclude that the result reached by the majority is both illogical and inconsistent.
While the appellee raises the specter of children endlessly awaiting ultimate disposition as to their custody, Florida statutory law and procedural rules safeguard against any excessive delay caused by Anders-type protections in the district courts. Section 39.815(1) of the Florida Statutes mandates that district courts of appeal give "an appeal from an order terminating parental rights priority in docketing" and requires a decision to be rendered "on the appeal as expeditiously as possible." § 39.815(1), Fla. Stat. (2001). See also Fla. R.App. P. 9.146(g) ("The court shall give priority to appeals [in juvenile dependency and termination of parental rights cases] under this rule."). Additionally, the district courts themselves have strong policies which ensure the rapid resolution of parental rights termination proceedings.[8] Thus, the extant statutory framework ensures that application of Anders-type protections to parental rights termination appeals would not prolong these actions any longer than is necessary to protect the fundamental liberties of all the parties involved. While I understand that the majority may not wish to impose full Anders proceedings in this context, a result with which I have no fundamental opposition, we should at least institute Anders-type protections formulated and crafted for this type of proceeding to ensure fundamental justice.
Finally, I am guided by the principle that
the Constitution recognizes higher values than speed and efficiency. Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy....
Stanley v. Illinois, 405 U.S. 645, 656, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (footnote omitted). At some point, we must thoroughly recognize that there are higher values in a system which professes to do justice and care for its children than mere *908 speed of operation and speed for the purpose of expediency. Indeed, the federal and Florida constitutions mandate that the courts protect the fundamental interests of the people regardless of the possibility of slight delays in final adjudication. If it is the Anders process itself that should be reconsidered, then so be it, and I would agree. However, the inconsistency of application causes me to respectfully concur in result only because we fail to afford any Anders-type protections whatsoever which, in my view, could be easily crafted and formulated for fundamental fairness yet not require a full Anders proceeding as it presently exists.
NOTES
[1] Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).
[2] The question as phrased by the Fifth District stated:

IN TERMINATION OF PARENTAL RIGHTS CASES, IF AN ATTORNEY APPOINTED TO REPRESENT AN INDIGENT PARENT BELOW IN GOOD FAITH DETERMINES THAT THERE IS NO VALID ISSUE ON APPEAL, SHOULD THAT ATTORNEY BE PERMITTED TO WITHDRAW PURSUANT TO OSTRUM [V. DEPARTMENT OF HEALTH & REHABILITATIVE SERVICES, 663 So.2d 1359 (Fla. 4TH DCA 1995) ], OR BE REQUIRED TO FILE AN ANDERS TYPE BRIEF?
N.S.H., 803 So.2d at 879.
[3] See Pennsylvania v. Finley, 481 U.S. 551, 554, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) ("The holding in Anders was based on the [criminal defendant's] underlying constitutional right to appointed counsel established in Douglas ....").
[4] In addition, because the two parents are often represented by different lawyers in cases where both parents' rights are terminated, it is entirely possible that the interest of one parent may conflict with that of the other parent.
[5] The standard of appellate review of these fact-based issues is abuse of discretion, which is essentially a "reasonableness" test. See Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980). "Discretion ... is abused when the judicial action is arbitrary, fanciful, or unreasonable," and "[i]f reasonable [people] could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion." Id.
[6] As Judge Warner of the Fourth District Court of Appeal has explained, in many Anders cases "the defendant has pled to the charge or has been convicted in a relatively short trial.... The issues in such cases involve either the voluntariness of the plea or the sentence. Typically the record is very limited. Judicial review of the record is not time-consuming...." Martha C. Warner, Anders in the Fifty States: Some Appellants' Equal Protection Is More Equal Than Others', 23 Fla. St. U.L.Rev. 625, 655 (1996).
[7] Eldridge sets forth a three-factor test to determine whether the Due Process Clause of the Fourteenth Amendment mandates additional procedures. It instructs that we look to (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation through the procedures used and probable value of substitute procedures; and (3) the Government's interest, including the fiscal and administrative burden of substitute procedures. See 424 U.S. at 335, 96 S.Ct. 893.
[8] See, e. g., In re C.G., 609 So.2d 631, 632 (Fla. 2d DCA 1992) ("Even before the legislature mandated expedited appeals in parental [rights] termination cases ... it was the policy of this court to expedite such appeals."); see also C.S. v. S.H., 671 So.2d 260 (Fla. 4th DCA 1996).