# Third District Court of Appeal

## State of Florida

Opinion filed January 7, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D25-0543
Lower Tribunal No. 23-15785-CA-01
_____


**Lawonda Breedlove, et al.,**
Appellants,

vs.

**David M. Gersten, etc.,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Spencer Eig, Judge.

Kozyak Tropin & Throckmorton LLP, and Dwayne A. Robinson and Abe Andrew Bailey, for appellants.

Damian | Valori | Culmo, and Peter F. Valori and Kristopher E. Pearson, for appellee.

Before SCALES, C.J., and FERNANDEZ and GOODEN, JJ.

GOODEN, J.

The Appellants—Lawonda Breedlove, Catresa Montgomery, Lovester Montgomery, Fuquan Thomas, Shekita Whitfield, Grecia Bozeman, Joanna Manzi—are seven rental tenants who lost their personal property and housing when their condominium complex burned. They appeal an order denying their motion to intervene in the receiver's partition action. We affirm.[1]

## I.

The New World Condominium Apartments was a residential complex in Miami Gardens, Florida. The complex housed more than two hundred residents—many of which were rental tenants. The complex was maintained and operated by the New World Condominium Apartments Condominium Association.

But the complex fell into disrepair. The 40-year recertification inspection found numerous problems involving the roof, electrical rooms, guardrails, security bars that prevented egress, and an incomplete fire alarm

---

[1] We have jurisdiction. See Art. V, § 4(b)(1), Fla. Const.; Fla. R. App. P. 9.110; Accident911 Help Med. Ctr. Corp. v. Direct Gen. Ins. Co., 387 So. 3d 360, 361 n.1 (Fla. 3d DCA 2023) ("The order denying intervention is a final order because it constitutes a final determination—and ends all judicial labor—as it relates to appellants' participation in the underlying litigation.").

system. After putting off assessments for many years, the Association finally focused on repairing the roof.

Tragically, on January 28, 2023, a fire engulfed the New World Condominium Apartments. The building was rendered unsafe and uninhabitable.

Shortly thereafter, several unit owners filed suit against the Association. They sought the appointment of a receiver to manage the property and sought injunctive relief. Finding the destruction of the complex was caused by the Association's neglect and inaction, the trial court placed the property into receivership. It appointed Appellee David M. Gersten as the receiver. Gersten was tasked with taking possession of the Association's assets, managing those assets, collecting its debts and assessments, and exercising all powers afforded the officers and directors of the Association. At that time, the Association only had $9,000 in its bank account. The unit owners owed the Association over $364,000 in unpaid maintenance fees and assessments. The Association did not have the financial means to pay its creditors. The trial court imposed a stay "prohibiting all persons and entities from commencing or continuing any litigation against executing, garnishing, attaching, and/or levying on any [or] all assets of the Association without prior approval of [the] Court."

3

The seven rental tenants then filed a motion to partially lift the stay. They explained: "As a compromise, Tenant-Plaintiffs seek only to leave to pursue claims against the Association that are covered (or may be covered) by its $2 million insurance policy." They sought to do so "before the Association sells the property." The parties agreed and the trial court issued a stipulated order. Relevant to this appeal, the order provided:

1. The Motion is **GRANTED under the conditions set forth below**.

2. Tenant-Plaintiffs are hereby permitted to bring an action naming the Association as a Defendant.

3. Tenant-Plaintiffs' relief against the Association will be limited to the maximum amount they can recover from the Association's insurance policy, to the extent there is coverage.

4. Tenant-Plaintiffs (and, in the event of class certification, their represented class) are barred from seeking recovery from the assets of the Association.

Following the stipulated stay order, the rental tenants filed two class action lawsuits: 1) against the management company of the Association, Prestige Management; and 2) against the Association, in its individual and representative capacities, and the condominium unit owners.

Meanwhile, the condominium was demolished. Gersten filed an action for partition of the remaining 3.5 acres of vacant land on which the condominium previously stood. This was done to "sell the Condominium

4

Property at the highest price possible and, after paying expenses of the Receivership, to distribute the proceeds of the sale to the lienholders and property owners." He also sought a declaratory judgment, seeking a determination that the Association is terminated under the declarations of condominium.

One year later, the seven rental tenants sought to intervene in the partition action. They emphasized that the action "seeks to dissolve the very entity [they] are suing to recover from and preclude its ability to pay their judgment directly or through its members." They contended "[t]he proposed sale of this real property, the sole asset from which recovery could be satisfied, would severely limit, and possibly eviscerate, any viable source of recovery for tenants who have yet to be made whole for damages they have suffered."

Gersten opposed these efforts. He pointed to the trial court's prior stay order. He also maintained that the seven rental tenants did not have adequate interests to justify intervention, as they have no interest in the partition action or the property itself. At best, their interests are contingent upon obtaining a future judgment against the unit holders—all of which are *not* landlords.[2]

---

[2] Several unit owners occupy their units and do not rent them to others.

But, in response to Gersten's opposition, the seven rental tenants changed course. While initially asserting the condominium property was an asset of the Association, the seven rental tenants then contended that their intervention would not violate the stipulated stay order because the property is not an asset of the Association, but "of the unit owners."

The trial court heard argument from the parties. The trial court denied the motion based on the prior stay order.[3] This appeal followed.

## II.

"We review an order denying a motion to intervene for abuse of discretion." De Sousa v. JP Morgan Chase, N.A., 170 So. 3d 928, 929 (Fla. 4th DCA 2015).

## III.

## A.

The seven rental tenants assert that the trial court erred by misreading the stay order. They claim that they are seeking to hold the unit owners liable, and their claims thus fall outside the order. We disagree with this narrow reading. It ignores context. See Antonin Scalia & Bryan A.

---

[3] On the same day, the trial court granted Gersten's motion for summary judgment on the issue of partition.

6

Garner, Reading Law: The Interpretation of Legal Texts 167 (2012) ("Context is a primary determinant of meaning.").

Upon the property being placed into a receivership, the trial court imposed a stay "prohibiting all persons and entities from commencing or continuing any litigation against executing, garnishing, attaching, and/or levying on any [or] all assets of the Association without prior approval of [the] Court." At that time, the Association had minimal funds in its bank account and it did not have the financial means to pay its creditors. The unit owners owed it over $364,000 for unpaid fees and assessments. The seven rental tenants moved to partially lift that stay. They explained they intended to sue the Association and *only* to the extent that they would pursue the $2 million insurance policy issued to the Association. Indeed, their motion was clear. It sought: "As a compromise, Tenant-Plaintiffs seek only leave to pursue claims against the Association that are covered (or may be covered) by its $2 million insurance policy." They wanted to do so "before the Association sells the property."

In short, the seven rental tenants recognized that they could not seek to recover the property itself, and instead, sought to pursue the insurance monies before the Association sold the property and dissolved itself. This carried over to the parties stipulation. In the stipulated stay order, the trial

7

court permitted the rental tenants "to bring an action naming the Association as a Defendant," limiting the "relief against the Association . . . to the maximum amount they can recover from the Association's insurance policy, to the extent there is coverage." The rental tenants were barred from seeking recovery from the assets of the Association.

This context supports the trial court's view. The seven rental tenants are prohibited from now intervening to object to the sale of the complex and from asserting claims—those that go beyond the insurance policy and the stipulated stay order. See generally Gunn Plumbing, Inc. v. Dania Bank, 252 So. 2d 1, 4 (Fla. 1971) ("A stipulation properly entered into and relating to a matter upon which it is appropriate to stipulate is binding upon the parties and upon the Court. Also, a stipulation entered into during the course of one action may, unless expressly limited by its terms, be recognized in another action or proceeding.").

**B.**

Florida Rule of Civil Procedure 1.230 governs intervention. The Rule provides: "Anyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by the court in its discretion." Fla. R. Civ. P. 1.230.

8

It is a "permissive right granted in the trial court's discretion." De Sousa, 170 So. 3d at 929.

"Unquestionably, any time a party seeks to intervene in a cause of action, a two-step process is implicated." Sullivan v. Sapp, 866 So. 2d 28, 33 (Fla. 2004). The first step analyzes the propriety of intervention. Id. It involves an examination of whether "the interest asserted is appropriate to support intervention." Union Cent. Life Ins. Co. v. Carlisle, 593 So. 2d 505, 507 (Fla. 1992).

> [T]he interest . . . must be in the matter in litigation, and of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment. In other words, the interest must be that created by a claim to the demand in suit or some part thereof, or a claim to, or lien upon, the property or some part thereof, which is the subject of litigation.

Morgareidge v. Howey, 78 So. 14, 15 (Fla. 1918). "A showing of indirect, inconsequential or contingent interest is wholly inadequate." Stefanos v. Rivera-Berrios, 673 So. 2d 12, 13 (Fla. 1996).

After conducting the first step and concluding there is sufficient interest to support intervention, the trial court "must exercise its sound discretion to determine whether to permit intervention." Union Cent. Life Ins. Co., 593 So. 2d at 507. The trial court "should consider a number of factors, including the derivation of the interest, any pertinent contractual language, the size of the

9

interest, the potential for conflicts or new issues, and any other relevant circumstance." Id. at 507–08. Then, the trial court must set the parameters of the intervention. Id. at 508. In any event, "intervention should be limited to the extent necessary to protect the interests of all parties." Id.

Keeping these principles in mind—even if we agreed with the seven rental tenants on the scope of the stay order—we would still affirm. See generally Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 644 (Fla. 1999) ("Stated another way, if a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record."); Applegate v. Barnett Bank, 377 So. 2d 1150, 1152 (Fla. 1979) ("The written final judgment by the trial court could well be wrong in its reasoning, but the decision of the trial court is primarily what matters, not the reasoning used. Even when based on erroneous reasoning, a conclusion or decision of a trial court will generally be affirmed if the evidence or an alternative theory supports it.").

This is because the seven rental tenants do not have a sufficient interest to justify intervention. They have no claim to, or lien upon, the property. Morgareidge, 78 So. at 15. They are not unit owners or have any title interest. They are not lienholders. Any interest the seven rental tenants have is indirect and purely contingent. It is contingent on them recovering a

10

judgment against the unit owners—and then, even upon the unit owners receiving monies from the sale of the property. This type of interest is "wholly inadequate." Stefanos, 673 So. 2d at 13. They cannot be understood as "necessary or proper" parties. Morgareidge, 78 So. at 15. The first step of the inquiry was not satisfied.

## IV.

While we understand the adversity that the seven rental tenants have faced when they lost their possessions and housing, this hardship does not translate into a direct and immediate interest that would warrant intervention in this case. It also does not grant them the right to bypass the order they stipulated to. The trial court did not abuse its discretion by denying the motion to intervene. And so, we affirm.

Affirmed.